[No. H020648. Sixth Dist. Feb. 13, 2003.]

MHC OPERATING LIMITED PARTNERSHIP, Plaintiff and Respondent,
v.
CITY OF SAN JOSE et al., Defendants and Appellants;
WALLACE SUCHOLAS, Intervener and Respondent.

[No. H022038. Sixth Dist. Feb. 13, 2003.]

MHC OPERATING LIMITED PARTNERSHIP, Plaintiff and Appellant, v.
CITY OF SAN JOSE et al., Defendants and Respondents;
WALLACE SUCHOLAS, Intervener and Respondent.

**COUNSEL**

Hart, King & Coldren, Robert S. Coldren, C. William Dahlin; Law Offices of Paul T. Jensen and Paul T. Jensen for Plaintiff and Appellant and for Plaintiff and Respondent.

Richard Doyle, George Rios, Robert Fabela and Margo Laskowska for Defendants and Appellants and for Defendants and Respondents.

Bay Area Legal Aid and Tom Weathered for Intervener and Respondent.

**OPINION**

**WUNDERLICH, J.—**

### INTRODUCTION

This consolidated appeal arises out of administrative and judicial proceedings involving San Jose's mobilehome rent control ordinance.

*The Parties:* Appellants and cross-respondents are the City of San Jose and its department of parks, recreation, and neighborhood services (collectively the City). The City has enacted and administers a mobilehome rent control ordinance (the Ordinance). Respondent and cross-appellant is MHC Operating Limited Partnership (MHC). MHC owns and operates a 725-unit mobilehome park within the City known as Westwinds Manufactured Home Community mobilehome park (the Park), which it purchased in 1997. There

is also one intervener on appeal, cross-respondent Wallace Sucholas (Sucholas), who is a resident of the Park.

*The Ordinance:* The Ordinance permits mobilehome park owners a fair and reasonable return. (San Jose Mun. Code, tit. 17, ch. 17.22, § 17.22.020.)[1] The Ordinance operates on the rebuttable presumption that net operating income (NOI) provided owners with a fair return in the base year. (§§ 17.22.480, 17.22.510.) The Ordinance therefore defines fair return as the amount needed to maintain base year NOI, as adjusted for inflation. (§ 17.22.550.) Except in the case of rental units previously subject to long-term leases, the Ordinance establishes 1985 as the base year. (§ 17.22.490.) Base year NOI is calculated by subtracting actual operating expenses from gross income for the year. (§ 17.22.500; see also §§ 17.22.530, 17.22.540.) Under the Ordinance, park owners are allowed certain rent increases without review. (§ 17.22.450.) Applications for extraordinary increases (in excess of those allowed without review) must be approved by an administrative hearing officer. (§ 17.22.460.)

*Summary of Proceedings Below:* MHC applied for an extraordinary rent increase. The hearing officer denied the application on the ground that MHC had failed to provide base year NOI. MHC sought judicial relief, arguing that it was unable to calculate base year NOI because of missing financial records and further arguing that the Ordinance violated its constitutional right to a fair return. In 1999, the superior court issued a writ commanding the City to reconsider MHC's application. In response, the City amended the Ordinance to permit estimates of 1985 base year NOI. Thereafter, further administrative proceedings were conducted, but MHC was again denied a rent increase. MHC then sought a supplement writ from the superior court, which was denied in July 2000.

*The Appeals:* On appeal, the City claims that the trial court erred in granting the 1999 writ. MHC asserts that the court erred in refusing to grant supplemental writ relief in 2000. As we explain below, we dismiss the City's appeal as moot, and we reject MHC's appeal on the merits.

PROCEDURAL HISTORY

In 1998, MHC applied for an extraordinary rent increase under the Ordinance. At the time of MHC's application, the Ordinance contained no provision permitting the use of estimates to establish base year NOI.

---

[1] Further section references are to chapter 17.22 of title 17 of the San Jose Municipal Code unless otherwise stated.

*Proceedings Leading to the City's Appeal:*

Hearings on MHC's rent increase application were conducted in September 1998.[2] At those hearings, MHC claimed that it was unable to establish 1985 NOI because the park's prior owner had not retained adequate financial records. MHC therefore sought to use 1996 as the base year, instead of 1985. The hearing officer rejected that approach and denied a rent increase, citing MHC's failure to establish 1985 base year NOI.

MHC then petitioned the superior court for a writ of administrative mandamus, challenging the denial of its rent increase application. (Code Civ. Proc., § 1094.5.)

In 1999, the trial court granted MHC's writ petition. The court declared the Ordinance unconstitutional as applied to MHC, because it lacked a mechanism for calculating fair return when mobilehome park owners cannot prove actual base year NOI. Nevertheless, the court observed: "If the Ordinance did allow an estimation of net operating income for 1985, then [MHC] would not be deprived of a fair rate of return because [it] could present circumstantial evidence of the net operating income in 1985. . . . However, the Ordnance [*sic*] does not allow estimations." The court issued a writ of administrative mandamus commanding the City to reconsider MHC's rent increase application in light of the court's decision. (Code Civ. Proc., § 1094.5, subd. (f).)

The City's appeal is from the August 1999 judgment granting MHC's writ petition.

*Proceedings Leading to MHC's Appeal:*

In September 1999, in response to the trial court's decision, the City adopted an Urgency Ordinance, which amended the Ordinance to allow estimates of NOI when actual base year information is unavailable.

In November 1999, the rent control hearing officer conducted further hearings to reconsider MHC's rent increase application in light of the trial court's decision and the City's amendment to the Ordinance. MHC acknowledged that the purpose of the hearings was to permit it "to attempt to establish the net operating income for 1985 by inference . . . ." Despite that

---

[2]An earlier administrative hearing in this matter took place in August 1998. At that hearing, many of the mobilehome park residents settled their rent increase dispute with MHC. The September 1998 hearings thus affected only the nonsettling residents.

acknowledgement, MHC again sought to use 1996 as the base year instead of 1985, based on its claim it could not reasonably estimate 1985 NOI with the information available to it. In support of that claim, MHC offered the testimony of a certified public accountant, Wanda Ginner, who testified that she had "run out of ways to try to estimate 1985" and that "from an accountant's standpoint it cannot be done." To refute MHC's claim, the Park residents offered testimony from their own expert, Dr. Kenneth Baar, who opined that a reasonable estimate of 1985 NOI could be made using the available information.

The hearing officer credited the residents' evidence that 1985 NOI could be estimated. She also rejected MHC's contention that the Ordinance permitted it to use 1996 as a substitute base year. Based on those determinations, the hearing officer concluded that MHC had failed to carry its burden of establishing base year NOI, and she again denied MHC a rent increase. But the hearing officer made her decision "without prejudice," ruling that "MHC may reapply for the rent increase based on estimates of 1985 or such other base years as authorized" by the applicable provisions of the Ordinance.

MHC then moved the superior court for issuance of a supplemental writ of administrative mandamus. MHC asserted that the hearing officer had ignored the amended Ordinance and the court's prior order, and that her refusal to establish MHC's fair rate of return constituted an abuse of discretion.

After a hearing in late May 2000, the trial court denied MHC's motion for a supplemental writ, issuing its tentative decision several days after the hearing and its formal order in July 2000.

MHC's appeal challenges the trial court's July 2000 order denying its motion for a supplemental writ of mandate.

*Appellate Proceedings:*

In early May 2000, MHC moved this court for an order dismissing the City's appeal as moot. We initially deferred determination of MHC's motion pending the trial court's resolution of MHC's request for issuance of a supplemental writ, which was then still pending. In August 2000, after receiving a copy of the trial court's order denying MHC's request, we denied MHC's motion to dismiss the City's appeal, but without prejudice to its mootness claim being raised in the briefs on appeal.

In November 2000, pursuant to stipulation, we consolidated the City's appeal with MHC's appeal in this proceeding. We designated the City as

appellant and MHC as the respondent and cross-appellant. At the same time, we established a schedule for submitting briefs and appendices. The following month, on the motion of intervener Sucholas, we amended the consolidation order to permit Sucholas to respond in MHC's appeal. We subsequently denied the parties' requests for a stay of further administrative proceedings.

Both appeals have been fully briefed and argued. We consider each in turn.

## DISCUSSION

### I. *The City's Appeal (H020648)*

The City's appeal challenges the August 1999 judgment in which the trial court initially granted MHC's petition for a writ of administrative mandamus.

#### A. *Contentions*

##### 1. *The City's Claims*

The City contends that the trial court erred in two respects when it issued the writ in 1999. First, the City asserts, the court should not have granted the writ petition because MHC failed to join the Park's residents, who were real parties in interest and indispensable parties to the judicial proceeding. Second, the City urges, the trial court erred in ordering the hearing officer to reconsider her decision, since there was no evidence that MHC was receiving less than a fair return.

##### 2. *MHC's Response*

MHC initially responded to the City's appeal with a motion to dismiss on the ground of mootness. MHC renewed its mootness claim in its response brief. According to MHC, the City's actions following the August 1999 judgment operate as a waiver of its right to appeal and render its appeal moot. Specifically, MHC cites (1) the City's compliance with the trial court's mandate that its hearing officer reconsider MHC's rent increase application, and (2) the City's action in immediately amending the Ordinance.

We consider MHC's mootness claim now—at the threshold—since our determination of that question disposes of the City's appeal.

B. *Mootness*

■ A case is moot when the decision of the reviewing court "can have no practical impact or provide the parties effectual relief. [Citation.]" (*Woodward Park Homeowners Assn. v. Garreks, Inc.* (2000) 77 Cal.App.4th 880, 888 [92 Cal.Rptr.2d 268].) "When no effective relief can be granted, an appeal is moot and will be dismissed." (*In re Jessica K.* (2000) 79 Cal.App.4th 1313, 1315-1316 [94 Cal.Rptr.2d 798], citing *Eye Dog Foundation v. State Board of Guide Dogs for the Blind* (1967) 67 Cal.2d 536, 541 [63 Cal.Rptr. 21, 432 P.2d 717].)

■ In this case, we cannot grant the City any effective relief from the 1999 judgment, for it has already complied with the writ. The City acknowledges that it "did indicate in its writ return that, pending its appeal, it was making a 'good faith effort' to comply with the writ by amending its Rent Ordinance and offering MHC a new hearing." (Fn. omitted.) But the City argues that "it did so on the most narrow of grounds," by amending the Ordinance "to allow the use of 'estimations' in certain situations where records were unavailable." The City further argues that it did not thereby moot the "key issues" raised in its appeal. We disagree.

In our view, the City's postjudgment actions render its appeal moot. First, and most significantly, the City complied with the writ by allowing further hearings on MHC's application for a rent increase. The City's characterization of its actions as a mere "good faith effort" to comply is not persuasive. The writ commanded the City to reconsider MHC's rent increase application. Because the City complied with that command, it "waived its right to appeal. . . ." (*City of Carmel-By-The-Sea v. Board of Supervisors* (1982) 137 Cal.App.3d 964, 970 [187 Cal.Rptr. 379], citations omitted; see also *Morehart v. County of Santa Barbara* (1994) 7 Cal.4th 725, 746 [29 Cal.Rptr.2d 804, 872 P.2d 143] [compliance with the trial court's writ rendered the parties' dispute moot].) In addition to complying with the writ, the City amended the Ordinance. (See, e.g., *Equi v. San Francisco.* (1936) 13 Cal.App.2d 140, 141-142 [56 P.2d 590] [repeal of challenged provisions of ordinance rendered the appeal moot].) The fact that it did so "narrowly," in order to address the trial court's finding of unconstitutionality, does not alter the result. The City's appeal is moot.

Alternatively, the City urges us to consider its appeal on the merits—even if moot—because it presents issues of continuing public interest. ■ "[I]f a pending case poses an issue of broad public interest that is likely to recur, the court may exercise an inherent discretion to resolve that issue even

though an event occurring during its pendency would normally render the matter moot." (*In re William M.* (1970) 3 Cal.3d 16, 23 [89 Cal.Rptr. 33, 473 P.2d 737]; see also *Morehart v. County of Santa Barbara, supra,* 7 Cal.4th at p. 746.) The City argues that its appeal raises two issues of critical importance to future rent control disputes: (1) whether mobilehome park tenants are indispensable parties in rent control proceedings; and (2) what rights and responsibilities mobilehome park owners have when base year records are lost or destroyed.

Despite the City's urging, we decline to exercise our discretion to resolve the moot questions presented here. In our view, any such resolution would be unlikely to provide guidance for future rent control disputes, because the two issues presented in the City's appeal are essentially factual in nature and therefore require resolution on a case-by-case basis. (See *Giles v. Horn* (2002) 100 Cal.App.4th 206, 228 [123 Cal.Rptr.2d 735] ["Because plaintiffs' claim is a particularly factual determination that must be resolved on a case-by-case basis, dependent upon the specific facts of a given situation, it is not one on which we would exercise our discretion to address on the merits, despite the fact that it is moot."].) The first question raised by the City's appeal—whether a party is indispensable—is " 'fact-specific.' " (*County of San Joaquin v. State Water Resources Control Bd.* (1997) 54 Cal.App.4th 1144, 1152 [63 Cal.Rptr.2d 277], quoting *Travelers Indemn. Co. v. Dingwell* (1st Cir. 1989) 884 F.2d 629, 635.) Resolution of that question depends on " 'practical considerations in the context of a particular litigation.' " (*County of San Joaquin,* at p. 1152, quoting *Kickapoo Tribe of Indians in Kansas v. Babbitt* (D.C. Cir. 1995) 43 F.3d 1491, 1495.) As to the City's second appellate issue, which it frames as a question of recordkeeping responsibilities in connection with fair return calculations, its resolution requires resort to the evidentiary record, including the particular ordinance provisions at issue here. Thus, that second appellate issue is similarly case-specific, especially in light of the City's 1999 amendments to the Ordinance. (Cf., e.g., *San Marcos Mobilehome Park Owner' Assn. v. City of San Marcos* (1987) 192 Cal.App.3d 1492, 1502-1503 [238 Cal.Rptr. 290] [whether rent falls within constitutionally permissible range of fair return depends on factors such as property's value or expenses].) In short, given the fact-driven nature of the questions presented, it is unlikely that our resolution of the City's appeal would "provide much needed guidance for 'the orderly administration of justice . . .' [citation] . . . ." (*In re William M., supra,* 3 Cal.3d at p. 25.)

We therefore dismiss the City's appeal as moot.

## II. *MHC's Appeal (H022038)*

MHC's appeal challenges the July 2000 order denying its motion for a supplemental writ of mandate. In support of its contention that the trial court erred in refusing to issue a supplemental writ, MHC proffers seven separate arguments on appeal, all of which essentially assert this single claim: MHC was denied a fair return because the hearing officer misinterpreted and misapplied the amended Ordinance in light of the evidence produced at the administrative hearing.[3]

Before addressing MHC's specific contentions, we construct the legal framework that necessarily guides our analysis. First, we review the basic precepts underlying judicial oversight of administrative decisions; next, we discuss the standards of review that govern this appeal; then, we examine the general principles that inform rent control decisions; finally, against this analytic framework, we assess MHC's specific claims of error.

### A. *Judicial Review of Administrative Decisions*

■ An aggrieved party may seek judicial review of an administrative rent control decision by filing a petition for a writ of mandate in the Superior Court. (Code Civ. Proc., § 1094.5; *Carson Harbor Village, Ltd. v. City of Carson Mobilehome Park Rental Review Bd.* (1999) 70 Cal.App.4th 281, 287 [82 Cal.Rptr.2d 569].) "The inquiry in such a case shall extend to the questions whether the respondent [agency] has proceeded without, or in excess of jurisdiction; whether there was a fair trial; and whether there was any prejudicial abuse of discretion. Abuse of discretion is established if the respondent has not proceeded in the manner required by law, the order or decision is not supported by the findings, or the findings are not supported by the evidence." (Code Civ. Proc., § 1094.5, subd. (b).)

---

[3]MHC's seven arguments may be fairly summarized as follows: Its first four arguments assert that the hearing officer ignored various provisions of the Ordinance, including the urgency amendment. In its fourth and fifth arguments, MHC adds the claim that the hearing officer also ignored the evidence in rejecting 1996 as a base year and instead insisting on 1985 data. MHC's sixth argument is that the trial court should have issued a supplemental writ, because the Ordinance as applied denies MHC a fair return. MHC's seventh and final argument urges 1996 as an appropriate base year under the Ordinance. At the core of each of MHC's seven arguments is the assertion that it was denied a fair return as a result of misinterpretation or misapplication of the Ordinance in light of the evidence.

We do no violence to MHC's contentions by distilling them in this fashion. As MHC itself acknowledges, the basis of its appeal "is relatively simple. MHC contends that the administrative hearing officer . . . , and the Superior Court, erred, as a matter of law, by interpreting the . . . Ordinance as exclusively requiring the use of calendar year 1985 Net Operating Income to determine whether a just and reasonable return is being provided under the . . . Ordinance no matter what factual circumstances may exist."

## B. *Standards of Review on Appeal*

The parties disagree on the proper standard of appellate review in this case. In its opening brief, MHC asserts: "The standard of review in this matter is not a simple 'substantial evidence' review. There are no factual determinations by the Hearing Officer that relate to the denial of the rent increase Application that are in dispute. Rather, the issues before this Court arise out of the legal conclusions that were drawn by the Hearing Officer and whether those conclusions are constitutionally proper." MHC thus urges us to independently review the asserted errors of law below. At oral argument, MHC argued for a "special examination" as to some of the issues on appeal, based on its contention its constitutional right to a fair return is implicated here. The City posits that the review standard depends on the nature of the claims presented. With respect to MHC's contention that the hearing officer misconstrued the Ordinance, the City argues that the administrative interpretation, unless unreasonable or unlawful, is entitled to "great deference." With respect to MHC's claim that the hearing officer abused her discretion in denying a rent increase, the City urges us to apply the substantial evidence test. The intervener, Sucholas, likewise contends for substantial evidence review.

Given the parties' disagreement over the proper review standard, and the importance of that issue to our analysis, we set forth in some detail the standards that govern judicial review of administrative proceedings.

We begin by explaining the standards that guide the courts' evidentiary review, both at the trial level and at the appellate level.

In the trial court, the standard of review depends on the nature of the right affected by the administrative decision. (See Code Civ. Proc., § 1094.5, subd. (c).) "If the decision of an administrative agency will substantially affect a 'fundamental vested right,' then the trial court must not only examine the administrative record for errors of law, but must also exercise its independent judgment upon the evidence. [Citation.] When the administrative decision neither involves nor substantially affects such a right, then the trial court must review the whole administrative record to determine whether the findings are supported by substantial evidence and whether the agency committed any errors of law." (*Berlinghieri v. Department of Motor Vehicles* (1983) 33 Cal.3d 392, 395 [188 Cal.Rptr. 891, 657 P.2d 383], citing *Bixby v. Pierno* (1971) 4 Cal.3d 130, 143, 144 [93 Cal.Rptr. 234, 481 P.2d 242]; see generally Cal. Administrative Mandamus (Cont.Ed.Bar 2d ed. 1989) Scope of Review under CCP § 1094.5, §§ 4.128- 4.140, pp. 175-186

and 2002 supp., pp. 101-105.) Whether an administrative decision substantially affects a vested fundamental right is determined on a case-by-case basis. (*Bixby v. Pierno, supra,* 4 Cal.3d at p. 144.) "When determining what rights are fundamental for administrative review purposes, the court must determine if the right fundamentally affects the life situation of the individual to require independent review or whether it merely impacts an area of economic privilege in a less than fundamental manner." (*Concord Communities v. City of Concord* (2001) 91 Cal.App.4th 1407, 1413-1414 [111 Cal.Rptr.2d 511], citing *Berlinghieri v. Department of Motor Vehicles, supra,* 33 Cal.3d at pp. 395-398.) ▮ Against that measure, "a landowner's property right to raise rents is not a 'fundamental' right for substantive due process purposes . . . ." (*San Marcos Mobilehome Park Owners' Assn. v. City of San Marcos, supra,* 192 Cal.App.3d at p. 1501, fn. 9.) "A substantial evidence standard is proper when reviewing the decision of a rent control board because the owner's proposed rent increases do not involve an administrative decision which substantially affects fundamental rights." (*Concord Communities v. City of Concord, supra,* 91 Cal.App. 4th at p. 1414, citing *San Marcos Mobilehome Park Owners' Assn. v. City of San Marcos, supra,* 192 Cal.App.3d at p. 1500.)

▮ In the appellate court, the appropriate standard of review is substantial evidence, regardless of the nature of the right involved. Thus, even in those cases where "the trial court is required to review an administrative decision under the independent judgment standard of review, the standard of review on appeal of the trial court's determination is the substantial evidence test. [Citations.]" (*Fukuda v. City of Angels* (1999) 20 Cal.4th 805, 824 [85 Cal.Rptr.2d 696, 977 P.2d 693].) But the reviewing court's focus changes, depending on which standard of review governed at trial. "If the independent judgment test . . . applied at the trial, . . . on appeal, the trial court's factual bases for its decision, not the findings of the agency, are reviewed." (Cal. Administrative Mandamus, *supra,* Appeal from Superior Court Judgment, § 14.25, pp. 461-462.) "If the substantial evidence test governed at the trial level, . . . [¶] . . . [¶] . . . the appellate court focuses on the findings made by the agency rather than on findings made by the superior court." (*Id.,* § 14.27, pp. 463-464.)

▮ In this case, since the administrative proceeding did not affect a fundamental vested right, the trial court properly reviewed the administrative record for substantial evidence in support of the hearing officer's factual findings. (*Concord Communities v. City of Concord, supra,* 91 Cal.App.4th at p. 1414.) On appeal, we "answer the same key question as the trial court . . . whether the agency's findings were based on substantial evidence.

[Citations.]" (Cal. Administrative Mandamus, *supra,* Appeal from Superior Court Judgement, § 14.27, p. 463.) In applying the deferential substantial evidence test, we "begin with the presumption that the record contains substantial evidence to sustain the board's findings of fact." (*Carson Harbor Village, Ltd. v. City of Carson Mobilehome Park Rental Review Bd., supra,* 70 Cal.App.4th at p. 287.)

■ To the extent that the administrative decision rests on the hearing officer's interpretation or application of the Ordinance, a question of law is presented for our independent review. (See, e.g., *County of Madera v. Superior Court* (1974) 39 Cal.App.3d 665, 668 [114 Cal.Rptr. 283].) The interpretation of statutes and ordinances "is ultimately a judicial function." (*Carson Harbor Village, Ltd. v. City of Carson Mobilehome Park Rental Review Bd., supra,* 70 Cal.App.4th at p. 290.) Even so, the hearing officer's interpretation of the Ordinance is entitled to deference. "The courts, in exercising independent judgment, must give appropriate deference to the agency's interpretation." (9 Witkin, Cal. Procedure (4th ed. 1997) Administrative Proceedings, § 111, p. 1156, citing *Bodinson Mfg. Co. v. California E. Com.* (1941) 17 Cal.2d 321, 325 [109 P.2d 935], and *Nipper v. California Auto. Assigned Risk Plan* (1977) 19 Cal.3d 35, 45 [136 Cal.Rptr. 854, 560 P.2d 743]; see also *id.,* supp.) "An agency interpretation of the meaning and legal effect of a statute is entitled to consideration and respect by the courts; however, . . . the binding power of an agency's *interpretation* of a statute or regulation is contextual: Its power to persuade is both circumstantial and dependent on the presence or absence of factors that support the merit of the interpretation." (*Yamaha Corp. of America v. State Bd. of Equalization* (1998) 19 Cal.4th 1, 7 [78 Cal.Rptr.2d 1, 960 P.2d 1031], original italics.) "To quote the statement of the Law Revision Commission in a recent report, 'The standard for judicial review of agency interpretation of law is the *independent judgment* of the court, giving *deference* to the determination of the agency *appropriate* to the circumstances of the agency action.' (Judicial Review of Agency Action (Feb. 1997) 27 Cal. Law Revision Com. Rep. (1997) p. 81, italics added.)" (*Id.* at p. 8.) ■ "Unlike quasi-legislative rules, an agency's interpretation does not implicate the exercise of a delegated lawmaking power; instead, it represents the agency's view of the statute's legal meaning and effect, questions lying within the constitutional domain of the courts. But because the agency will often be interpreting a statute within its administrative jurisdiction, it may possess special familiarity with satellite legal and regulatory issues. It is this 'expertise,' expressed as an interpretation . . . , that is the source of the presumptive value of the agency's views." (*Id.* at p. 11.) In the particular context of rent control ordinances, "[t]he board's interpretation of an ordinance's implementation

guidelines is given considerable deference and must be upheld absent evidence the interpretation lacks a reasonable foundation. [Citation.] The burden is on the appellant to prove the board's decision is neither reasonable nor lawful. [Citation.]" (*Carson Harbor Village, Ltd. v. City of Carson Mobilehome Park Rental Review Bd., supra,* 70 Cal.App.4th at p. 287.)

To summarize, we review the hearing officer's factual determinations for substantial evidence. (*Carson Harbor Village, Ltd. v. City of Carson Mobilehome Park Rental Review Bd., supra,* 70 Cal.App.4th at p. 287.) We independently review the hearing officer's interpretation of the Ordinance, according that interpretation due deference. (*Ibid.*)

C. *General Principles Governing Rent Control*

"Rent control laws must be 'reasonably calculated to . . . provide landlords with a just and reasonable return on their property.' " (*Kavanau v. Santa Monica Rent Control Bd.* (1997) 16 Cal.4th 761, 768 [66 Cal.Rptr.2d 672, 941 P.2d 851], quoting *Birkenfeld v. City of Berkeley* (1976) 17 Cal.3d 129, 165 [130 Cal.Rptr. 465, 550 P.2d 1001].) "Fair return is the constitutional measuring stick by which every rent control board decision is evaluated." (*Carson Harbor Village, Ltd. v. City of Carson Mobilehome Park Rental Review Bd., supra,* 70 Cal.App.4th at p. 288.) "A 'just, fair and reasonable' return is characterized as sufficiently high to encourage and reward efficient management, discourage the flight of capital, maintain adequate services, and enable operators to maintain and support their credit status. However, the amount of return should not defeat the purpose of rent control to prevent excessive rents. [Citation.]" (*Id.* at pp. 288-289; see also *Kavanau v. Santa Monica Rent Control Bd., supra,* 16 Cal.4th at pp. 771-772.)

While a fair return is constitutionally required, "the state and federal Constitutions do not mandate a particular administrative formula for measuring fair return . . . ." (*Kavanau v. Santa Monica Rent Control Bd., supra,* 16 Cal.4th at p. 772, citing *Fisher v. City of Berkeley* (1984) 37 Cal.3d 644, 681 [209 Cal.Rptr. 682, 693 P.2d 261].) Thus, "rent control laws incorporate any of a variety of formulas for calculating rent ceilings." (*Kavanau v. Santa Monica Rent Control Bd., supra,* 16 Cal.4th at p. 768, citing Baar, *Guidelines for Drafting Rent Control Laws: Lessons of a Decade* (1983) 35 Rutgers L.Rev. 723, 781-817 (*Guidelines*).) "Under broad constitutional tolerance, California cities may enact various forms of residential rent control measures to satisfy the just, fair and reasonable rent standard. [Citation.] Public administrative bodies, charged with implementing and enforcing rent control

measures, are not obliged by either state or federal constitutional requirements to employ any prescribed formula or method to fix rents." (*Carson Harbor Village, Ltd. v. City of Carson Mobilehome Park Rental Review Bd., supra,* 70 Cal.App.4th at p. 289.)

██ One permissible rent control approach—the one employed here—is the " 'maintenance of net operating income' " formula. (See, e.g., *Kavanau v. Santa Monica Rent Control Bd., supra,* 16 Cal.4th at p. 768; *Vega v. City of West Hollywood* (1990) 223 Cal.App.3d 1342, 1351-1352 [273 Cal.Rptr. 243].) "The maintenance-NOI approach has been praised by commentators for both its fairness and ease of administration." (*Palomar Mobilehome Park Assn. v. Mobile Home Rent Review Com.* (1993) 16 Cal.App.4th 481, 486 [20 Cal.Rptr.2d 371], citing *Guidelines, supra,* 35 Rutgers L.Rev. at pp. 809-816.) "A typical maintenance of net operating income formula presumes the landlord's net operating income at the time rent control began provided a just and reasonable return. In order to maintain this net operating income at a constant level, the law permits rent increases that will enable the landlord to recoup increases in ongoing operating expenses." (*Kavanau v. Santa Monica Rent Control Bd., supra,* 16 Cal.4th at pp. 768-769, citing *Guidelines, supra,* 35 Rutgers L.Rev. at pp. 809-817.) "Of course, if the law holds net operating income constant, inflation will erode the real value of that income. Thus, many maintenance of net operating income formulas permit a periodic inflation adjustment. [Citations.]" (*Kavanau v. Santa Monica Rent Control Bd., supra,* 16 Cal.4th at p. 769.)

Regardless of what formula is selected, however, "the procedural mechanism by which landlords may obtain [rent] adjustments must not be prohibitively burdensome [citations]." (*Kavanau v. Santa Monica Rent Control Bd., supra,* 16 Cal.4th at p. 772; see also, e.g., *Vega v. City of West Hollywood, supra,* 223 Cal.App.3d at p. 1350.)

With the foregoing principles in mind, we turn to MHC's specific claims on appeal.

### D. *Application to This Case*

██ As we explained above, MHC's seven assertions of error essentially boil down to a single claim: that the hearing officer denied MHC a fair return by misconstruing the Ordinance in light of the uncontradicted evidence.

### 1. *Construction of the Ordinance*

The Ordinance employs the maintenance of net income formula, which operates on the presumption that net operating income in the base year

provided a just and reasonable return. (§ 17.22.480.) The Ordinance incorporates adjustment mechanisms both for inflation and for increases in operating expenses. (§§ 17.22.450, 17.22.470, 17.22.510.) The Ordinance expressly compels the hearing officer to "set the rent increase in the amount required to provide the landlord with a fair and reasonable return." (§ 17.22.580.) Further, pursuant to the Urgency Ordinance adopted in 1999: "No provision of Chapter 17.2[2] . . . shall be applied so as to prohibit the Administrative Hearing Officer from granting an increase that is demonstrated necessary to provide a mobilehome park owner with a fair return on investment." (Urgency Ord., § 1; see now § 17.22.030.) Finally, as amended by the 1999 Urgency Ordinance, the Ordinance allows estimates of base year NOI when actual base year information is unavailable. (Urgency Ord., § 2; see now § 17.22.495.)

On its face, then, the Ordinance allows owners a fair return. (See *Kavanau v. Santa Monica Rent Control Bd., supra,* 16 Cal.4th at pp. 768-769.)

MHC does not contend otherwise; instead, it challenges the hearing officer's interpretation and application of the Ordinance. MHC offers two general lines of argument in support of that challenge.

MHC's first line of attack relates to the Ordinance provisions that define and relate to base year. MHC takes issue with the hearing officer's interpretation of those provisions; it also argues for its own interpretation. MHC thus urges in its brief on appeal that the hearing officer erred by concluding "that calendar year 1985 NOI must be utilized as the 'base year' NOI no matter what factual situation may exist." (Underscoring in original.) In MHC's view, although the Ordinance favors 1985 base year data as a "preferred methodology," it does not mandate the use of NOI from that year, either actual or estimated. MHC also reads the Ordinance to "define[] base year NOI as 1985 plus each base year for the fifty-one (51) spaces at issue that were subject to a long term lease," (underscoring in original) and argues that the lack of a uniform base year renders the Ordinance unconstitutionally burdensome. (See, e.g., *Kavanau v. Santa Monica Rent Control Bd., supra,* 16 Cal.4th at p. 772; *Vega v. City of West Hollywood, supra,* 223 Cal.App.3d at p. 1350.) Consistent with its view of the Ordinance, MHC proffered 1996 as a substitute base year. It characterizes that alternative as "a viable and logical means, consistent with the economic foundation of the Ordinance, to measure MHC's fair rate of return . . . ." MHC claims that the hearing officer "was legally and equitably empowered (if not required) to allow and implement a uniform 'base year' for MHC's mobilehome park" and that she "erred by rejecting 1996 as a base year." In support of its construction of the

Ordinance as allowing an alternative base year, MHC argues that its proffered "methodology . . . is the same as set in the Ordinance: comparison of a base year to a companion year. Only the base year is different."

We reject all of MHC's arguments concerning the base year provisions of the Ordinance, starting with those that rely on its preferred interpretation. In the first place, substitution of an alternative base year does not employ the same methodology or accomplish the same result. The trial court explicitly recognized as much in its 1999 tentative decision. The hearing officer did so as well, observing: "It is true that [MHC] is entitled to maintain a fair return on its investment. However, it is equally true that the calculation of the fair return must be based on the comparison of fair net operating income established for 1985, with net operating income for the current year. [¶] Neither the Superior Court nor the Ordinance allows for an alternative *methodology* for calculating the fair net operating income for the current year such as that proposed by [MHC]." (Original italics.) That is particularly true in this case, since the alternate year MHC proposes—1996—clearly postdates rent control.[4] In general, the maintenance of net operating income formula is based on pre-rent-control, fair-market assumptions. (See, e.g., *Kavanau v. Santa Monica Rent Control Bd., supra,* 16 Cal.4th at pp. 768-769; *Palomar Mobilehome Park Assn. v. Mobile Home Rent Review Com., supra,* 16 Cal.App.4th at p. 487.) Furthermore, even if MHC's proposal did offer a reasonably equivalent alternative, it is the City's prerogative to determine what rent control scheme it will adopt: it "may choose to regulate pursuant to any fairly constructed formula even though other proper formulas might allow for higher prices." (*Palomar Mobilehome Park Assn. v. Mobile Home Rent Review Com., supra,* 16 Cal.App.4th at p. 487.) As to MHC's suggestion that the Ordinance is unduly burdensome to the extent it requires multiple base year estimates, we find no indication in the record that the hearing officer so construed the Ordinance. Finally, we uphold the hearing officer's decision to reject the "suggestion that an alternative base year could be substituted for 1985." To the extent the decision rests on her interpretation of the Ordinance, it must be "given considerable deference and must be upheld absent evidence the interpretation lacks a reasonable foundation. [Citation.]" (*Carson Harbor Village, Ltd. v. City of Carson Mobilehome Park Rental Review Bd., supra,* 70 Cal.App.4th at p. 287.) MHC has failed to demonstrate that the hearing officer's interpretation is either unreasonable or unlawful. (*Ibid.*)

---

[4]MHC argues that the Ordinance's selected base year—1985—likewise postdates rent control in San Jose, which began in 1979. (See *Pennell v. City of San Jose* (1986) 42 Cal.3d 365, 367 [228 Cal.Rptr. 726, 721 P.2d 1111].) But even assuming the factual accuracy of that observation, it is within the City's legislative authority to decide what base year to employ in its rent control ordinance. (*Palomar Mobilehome Park Assn. v. Mobile Home Rent Review Com., supra,* 16 Cal.App.4th at p. 487.)

In a second line of attack, MHC asserts that the "hearing officer ignored the very mandate and guiding principle" of the Ordinance to establish a fair and reasonable rate of return. As MHC sees it, the hearing officer refused to comply with the Ordinance's mandate despite the "uncontroverted" evidence (1) that it was "impossible to reconstruct net operating income for 1985 as a base year for this mobilehome park" and (2) that "1996 NOI reflected a reasonable measurement of return on investment . . . ." (Underscoring omitted.) As a result, MHC claims, it has been denied a fair return.

The vitality of that argument depends on the evidentiary record, because it is premised on MHC's assertion that its evidence was "uncontroverted," "uncontradicted," "undisputed," and "unrefuted." We therefore turn to an examination of the evidence in the administrative record, which we review under the deferential substantial evidence test.

### 2. *The Evidence*

To satisfy the substantial evidence test, the administrative record must disclose a "proper evidentiary basis" to support an agency's "conclusions on a fair rate of return." (*Whispering Pines Mobile Home Park, Ltd. v. City of Scotts Valley* (1986) 180 Cal.App.3d 152, 161 [225 Cal.Rptr. 364]; see also *Carson Harbor Village, Ltd. v. City of Carson Mobilehome Park Rental Review Bd., supra,* 70 Cal.App.4th at p. 287; *Yee v. Mobilehome Park Rental Review Bd.* (1993) 17 Cal.App.4th 1097, 1107 [23 Cal.Rptr.2d 1].) "Application of the test inherently requires that the reviewing court first determine the question, 'Substantial evidence of what?' " (*Yee v. Mobilehome Park Rental Review Bd., supra,* 17 Cal.App.4th at p. 1106.) In this case, the "what" is MHC's ability to estimate 1985 net operating income.

The question before us, therefore, is whether the administrative record supports the hearing officer's determination that 1985 NOI could be estimated.

MHC asserts that there is no evidentiary support for that determination. MHC first points to the testimony of its expert, who testified that 1985 net operating income could not be estimated. MHC repeatedly characterizes that evidence as undisputed. We flatly reject that characterization. In fact, the expert testimonial evidence offered by MHC was squarely contradicted by expert testimonial evidence offered by the residents. The residents' expert, Dr. Baar, testified about specific income and expense data that could form the basis for a reasonable estimate of 1985 NOI and about methods for making such an estimate. Dr. Baar began by citing information sources available to establish 1985 income, including "extensive information about

base rents" from prior rent "arbitration decisions." He also testified to two other potential sources of income data: information from longtime park residents (for rental income), and utility consumption records (for utility income). With respect to expenses, Dr. Baar testified that 1985 real estate tax data is available from the tax collector's office; he also opined that prior ground lease expenses could be extrapolated by using current data and adjusting for inflation. Given the available information concerning expenses, Dr. Baar concluded that about "eighty percent of it you can estimate pretty precisely." Furthermore, he testified, "on top of this in this particular case we have an actual statement of allocation of income and expenses in the base year . . . ." That statement of 1985 income and expenses was submitted by MHC as part of its original rent increase application, which was later amended. In sum, Dr. Baar opined, "reasonable estimates can be made by the hearing officer in this case about the 1985 base year information." The hearing officer credited Dr. Baar's testimony, noting that he "introduced evidence of many sources of information." Contrary to MHC's assertions, Dr. Baar did not merely testify that "*hypothetically*, 1985 base year NOI could be estimated." (Original italics.) Nor do we find it "striking" or even noteworthy that Dr. Baar did not supply the estimates himself: it was up to MHC to do so in order to support its rent increase application.

We conclude that Dr. Baar's testimony alone constitutes substantial evidence in support of the hearing officer's determination that 1985 NOI in fact could be estimated. But further evidentiary support for that determination exists: As the hearing officer observed, MHC supported its original application with a schedule based on 1985 operating income. Given that schedule, it may be reasonably inferred that 1985 base year NOI could be established. We therefore reject MHC's assertion that the hearing officer's determination lacks evidentiary support.

In view of our determination that substantial evidence supports the hearing officer's decision, we necessarily reject MHC's argument that it was denied a fair return as a result of that decision. (Cf. *Vega v. City of West Hollywood, supra,* 223 Cal.App.3d at pp. 1349-1350.) Any denial of fair return resulted from MHC's failure to submit the available evidence of estimated net operating income for 1985 needed to support its rent increase application. (§ 17.22.510.)

3. *Conclusion*

To summarize: First, with respect to interpretation of the Ordinance, we conclude that MHC failed to carry its burden of showing that the hearing

officer's construction of the Ordinance was either unreasonable or unlawful. We therefore uphold the hearing officer's interpretation of the Ordinance as requiring base year data for 1985.

Next, with respect to the evidence, we reiterate that MHC bore the burden of presenting evidence from which either actual or estimated 1985 net operating income could be determined. MHC failed to submit any such evidence. MHC also failed to persuade the hearing officer that it was impossible to do so. Substantial evidence supports the hearing officer's conclusion that it was possible to submit such evidence.

The hearing officer therefore acted properly in concluding that MHC failed to carry its burden of proving entitlement to a rent increase under the Ordinance as properly construed. For the same reason, the trial court acted properly in denying MHC's motion for a supplemental writ of mandate.

DISPOSITION

The City's appeal (H020648) is dismissed as moot.

In MHC's appeal (H022038), we affirm the trial court's order denying MHC's motion for issuance of a supplemental writ of mandate.

Rushing, P. J., and Bamattre-Manoukian, J., concurred.

A petition for a rehearing was denied March 13, 2003, and the petition of respondent MHC Operating Limited Partnership for review by the Supreme Court was denied May 21, 2003.