Filed 1/26/16  Bottini v. City of San Diego CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| FRANCIS A. BOTTINI, JR., et al., Plaintiffs and Respondents, v. CITY OF SAN DIEGO, Defendant and Appellant. | D067510 (Super. Ct. No. 37-2013-00075491-CU-WM-CTL) |


APPEAL from an order of the Superior Court of San Diego County, Katherine A. Bacal, Judge.  Dismissed.


Jan I. Goldsmith, City Attorney, and Carmen A. Brock, Deputy City Attorney, for Defendant and Appellant.

Bottini & Bottini, Albert Y. Chang and Yury A. Kolesnikov for Plaintiffs and Respondents.

City of San Diego (City) staff determined the proposed construction of a residence by Francis A. Bottini, Jr., Nini M. Bottini, and the Bernate Ticini Trust dated March 9,

2009, Trust "3,"[1] is exempt from review under the California Environmental Quality Act (CEQA) (Pub. Resources Code, § 21000 et seq.). The La Jolla Planning Group (Planning Group) and the La Jolla Historical Society (Historical Society) appealed the determination, and the city council granted the appeals and issued a resolution requiring CEQA review. In response, the Bottinis filed a petition for administrative mandamus and complaint for inverse condemnation against the City.

In demurrer proceedings, the court abated the inverse condemnation cause of action pending resolution of the petition for writ relief. The court later granted the writ petition, and the City purports to appeal the order thereon. The Bottinis move for dismissal of the appeal under the "one final judgment" rule codified in Code of Civil Procedure section 904.1 (hereafter section 904.1) on the ground the order does not resolve their cause of action for inverse condemnation. The City counters that immediate appeal is required because it "is now faced with the intolerable dilemma of ignoring" the writ, "thereby risking a citation for contempt of [trial] court," or complying with the writ "and forfeiting its plea for relief from this court" on appeal.

We conclude the City's appeal violates the one final judgment rule, and thus we must dismiss it for lack of jurisdiction.[2] It is well established that an appeal cannot be taken from a judgment not disposing of all causes of action between the parties.

---

1    When referring to plaintiffs collectively, we use the Bottinis.

2    We deny the City's pending request for judicial notice filed June 25, 2015, on the ground the materials in question are unnecessary to resolution of the appeal. (*JRS Products, Inc. v. Matsushita Electric Corp. of America* (2004) 115 Cal.App.4th 168, 174.)

2

(*Morehart v. County of Santa Barbara* (1994) 7 Cal.4th 725, 740 (*Morehart*); *Griset v. Fair Political Practices Com.* (2001) 25 Cal.4th 688, 697 (*Griset*).) The City, however, need not comply with the writ, which has no return date, before the Bottinis' cause of action for delay damages under a temporary taking theory is tried or otherwise resolved. The trial court should now proceed with the inverse condemnation cause of action, after which a final judgment will issue and any aggrieved party may appeal.

FACTUAL AND PROCEDURAL BACKGROUND

In January 2011, the Bottinis purchased property on Virginia Way in La Jolla from Kristin A. Taylor. In 1927, a two-story beach cottage called the Windemere Cottage was moved to the property from its original location on Prospect Avenue. The cottage was designed by Joseph Falkenhan and Irving Gill in 1894 and built the following year. The cottage had a distinctive "flared roof, wide-overhanging redwood eaves, [and] ornamental redwood brackets."

Taylor had intended to restore the cottage "to its 1894 [p]eriod of [s]ignificance." Her architect obtained design assistance from the City, drafted conceptual plans, and requested a hearing before the City's Historical Resources Board (Board) on her behalf to nominate the cottage for historic designation. Further, Ronald May, a registered professional archaeologist, issued a report in February 2010 to support the nomination. May concluded the cottage qualified for historic designation under several criteria.

As part of their deal, the Bottinis obtained an assignment of Taylor's rights to the nomination and to May's report. The Bottinis, however, wanted to build a new residence on the lot. In May 2011, they withdrew the nomination for historic designation pending

3

before the Board. Francis Bottini, an attorney, sent May letters threatening legal action if he used his report to support historic designation or spoke out in favor of it.

The Bottinis realized their withdrawal of the nomination "did not conclusively resolve the historic issue." In July 2011, their attorney, Scott Moomjian, prepared a document titled "*HISTORICAL RESOURCE RESEARCH REPORT ADDENDUM*," which was intended to refute the May report. Based on an inspection by the Bottinis' architect, Timothy Golba, the addendum concluded Windemere Cottage was ineligible for historic designation because of an insufficient "degree of the original integrity."

In August 2011, the Bottinis applied to the City's Development Services Department (Department) for historic review, a prerequisite to development when a structure 45 years or older is located on the property. After public notice, Save Our Heritage Organization advised the Department that in its view, the cottage was eligible for historic designation at the state and national level. Further, the Historical Society urged the Board to designate Windemere Cottage historic under several criteria.

In September 2011, the Board held a hearing on the matter. Relying on Moomjian's addendum to the May report, staff recommended against historic designation because of the cottage's "lack of integrity." Board members made three motions for historic designation, and all failed to attain a majority vote.

The Bottinis then asked Golba "what their options were." Golba informed them that typically any work in the coastal zone, including demolition, required a coastal development permit, but there was an exception when demolition is to abate a public

4

nuisance. According to Golba, the Bottinis then "basically started looking further into . . . what is a public nuisance."

In October 2011, the City learned the Bottinis had removed Windemere Cottage's distinctive roof eaves and brackets. At about the same time, the state Office of Historic Preservation notified the Board that the cottage appeared to be eligible for the California Register of Historical Resources under two criteria. The Bottinis were aware of the notice.

In December 2011, the Bottinis told the City's division of Neighborhood Code Compliance (Code Compliance) that they wanted to demolish the cottage because it was unsafe. They submitted a report by a structural engineering firm that concluded the cottage "is considered uninhabitable and no persons shall be allowed to occupy" it. The Bottinis did not notify Code Compliance that the cottage was under consideration for statewide historic designation. Code Compliance visited the site and noted windows had been removed and the "eaves/overhangs on the second floor roof were cut off."

On December 21, 2011, Code Compliance sent a letter to the Bottinis declaring the cottage to be "unsafe and a public nuisance." The following day the Bottinis obtained a permit, and the day after that the cottage was demolished.

Approximately eight months later, the Bottinis applied to the Department for a coastal building permit for the construction of a new residence on their vacant lot. As part of the permit process, the Planning Group reviewed the project. The Planning Group believed the demolition of the Windemere Cottage was improper and intended to evade

5

state historical review. The Planning Group recommended that the Bottinis be required to obtain an after-the-fact coastal development permit for the demolition of the cottage.

Further, the Historical Society objected to approval of the Bottinis' proposed project without full CEQA review. The Historical Society criticized the City for authorizing the demolition of the Windemere Cottage, and claimed: "The site was noticed for public hearing [by the Office of Historic Preservation], which prompted the owner to quickly demolish it . . . on the excuse the building was unstable and not fit for habitation. It should be noted that any instability was created by the owner . . . , by directing the removal of the roof brackets, eaves, and other features critical to the stability of the single-wall construction methodology of this rare two-story structure."

In January 2013, however, the Department determined the project was exempt from CEQA review as new residential construction on an empty lot. The Planning Group and the Historical Society filed appeals, requesting that the city council review the Department's assumption the site was a vacant lot for purposes of CEQA review. They argued the whole project, including the Windemere Cottage and its demolition, must be considered.

At the September 23, 2013, final hearing, the city council voted five to three to grant the appeals. The city council concluded Code Compliance's issuance of a permit was unlawful. It adopted a resolution that ordered the Department to conduct a CEQA review, setting the baseline for the project at January 2010 when the Windemere Cottage was still in existence. Council member Lightner, who represents the La Jolla area, stated the "wanton and calculated destruction of [the] cottage by the current owners . . . should

6

not have been possible."  She deemed the Bottinis' conduct a "wake-up call for all . . . about the potential abuse of the system."

In November 2013, the Bottinis filed a petition for writ of administrative mandamus (first cause of action) and complaint for inverse condemnation (second cause of action) against the City.  The first cause of action sought a writ directing the City to set aside the city council's grant of the CEQA appeals.  The second cause of action sought damages for a "temporary taking" of their property.

The City demurred to both causes of action on the ground of prematurity.  At a hearing in July 2014, the court overruled the demurrer on the petition.  The court explained a challenge to CEQA review would be moot if not heard before the review was conducted.  The court abated the cause of action for inverse condemnation because "at this time it is unknown what use will be permitted."

In December 2014, trial was held on the petition.  The court granted it on the ground the city council's grant of the CEQA appeals was an abuse of discretion because there was insufficient evidence to support a finding the Bottinis' proposed project is *not* exempt from CEQA review.  The court determined the "baseline for a CEQA analysis must be the 'existing physical conditions in the affected area' and reflect the 'real conditions on the ground' "; the Windemere Cottage was demolished under a permit issued eight months before the Bottinis applied for a permit for a new residence, and thus the existing condition was an empty lot; and "[t]he fact that the City now believes the demolition permit should never have been issued is immaterial because the baseline does not consider the level of development 'that *could* or *should* have been present according

7

to a plan or regulation.' "  The court rejected the City's argument the Bottinis improperly segmented the project to evade CEQA review.

In January 2015, the court issued a peremptory writ of mandate, which provides: "Respondent City Council of the City of San Diego . . . shall set aside its adoption of Resolution Number R-308449, which granted the [e]nvironmental [a]ppeals filed by the . . . Planning Group and . . . Historical Society . . . , and reconsider the [a]ppeals in conformance with the views expressed in the attached [o]rder."  The Bottinis sought an order requiring that the City file a return of the writ within 90 days, but the City successfully opposed it.  The writ does not set forth any date for the return.

In February 2015, the City filed its notice of appeal.  In March 2015, the City served its answer to the second cause of action.  According to the Bottinis' appellate attorney, they "intend to proceed to trial on the [inverse condemnation claim] as soon as practicable."

DISCUSSION

I

The Bottinis contend we must dismiss the City's appeal for lack of jurisdiction under the one final judgment rule codified in section 904.1.  We agree.

"A reviewing court has jurisdiction over a direct appeal only when there is (1) an appealable order or (2) an appealable judgment."  (*Griset, supra,* 25 Cal.4th at p. 696.) "A trial court's order is appealable when it is made so by statute."  (*Ibid.*)  Section 904.1, subdivision (a)(1) provides an appeal may be taken from a " 'judgment, except . . . an interlocutory judgment . . . .' "  "A judgment that disposes of *fewer* than all of the causes

8

of action framed by the pleadings . . . is necessarily 'interlocutory' ( . . . § 904.1, subd. (a)), and not yet final, as to any parties between whom another cause of action remains pending." (*Morehart, supra,* 7 Cal.4th at p. 741.)  "[A] judgment is a final determination of the rights of the parties."  (*Griset,* at p. 698.)

The "one final judgment rule does not permit parties 'to separate [their] causes of action into two compartments for separate appellate treatment at different points in time.' "  (*Kurwa v. Kislinger* (2013) 57 Cal.4th 1097, 1107.)  The theory of the rule is that " 'piecemeal disposition and multiple appeals in a single action would be oppressive and costly, and that a review of intermediate rulings should await the final disposition of the case.' "  (*Griset, supra,* 25 Cal.4th at p. 697.)

The facts of *Morehart* are on point.  *Morehart* was a purported appeal of the grant of a petition for writ of mandate and causes of action for declaratory and injunctive relief, which were tried separately from causes of action for damages for inverse condemnation and violation of civil rights.  (*Morehart, supra,* 7 Cal.4th at p. 735.)  The California Supreme Court held the order on fewer than all causes of action was not appealable.  (*Id.* at pp. 743-745.)  *Morehart* disapproved of an exception to the one final judgment rule recognized in *Schonfeld v. City of Vallejo* (1975) 50 Cal.App.3d 401, and progeny, which allowed an appeal from a judgment that left some causes of action unresolved, when those counts were tried separately or severed for trial.  (*Morehart,* at pp. 736-743.) *Morehart* held that "[a] petition for a writ, not an appeal, is the authorized means for

9

obtaining review of judgments and orders that lack the finality required by . . . section 904.1, subdivision (a)." (*Id.* at pp. 743-744.)[3]

In *Griset, supra,* 25 Cal.4th at pages 696-697, the court pronounced: "There is no statute that makes an order denying a writ of administrative mandate petition separately appealable when, as here, the petition has been joined with other causes of action that remain unresolved." The court added that "allowing an appeal in that situation would be contrary to the 'one final judgment' rule, a fundamental principle of appellate practice that prohibits review of intermediate rulings by appeal until final resolution of the case. . . . When an order denying a petition for writ of administrative mandate does not dispose of all causes of action between the parties, allowing an appeal from the denial order would defeat the purpose of the one final judgment rule by permitting the very piecemeal dispositions and multiple appeals the rule is designed to prevent." (*Id.* at p. 697, citations omitted.)

We are, of course, bound by Supreme Court precedent. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.) The order issuing a writ of mandate here is not a final judgment because the Bottinis' cause of action for damages for inverse condemnation is unresolved. "[T]he one final judgment rule does not allow contingent causes of action to exist in a kind of appellate netherworld." (*Don Jose's Restaurant, Inc. v. Truck Ins. Exchange* (1997) 53 Cal.App.4th 115, 118.)

---

3        In *Morehart,* the court reached the merits by exercising its discretion to deem the appeal a petition for writ relief. The court concluded the action involved a matter of continuing public interest that was likely to recur. (*Morehart, supra,* 7 Cal.4th at p. 747.) The City does not assert we should treat its appeal as a petition for writ relief.

10

II

We asked the parties to submit supplemental briefing on whether the order on the writ of mandate may be considered an injunction. An exception to the one final judgment rule allows an appeal to be taken from "an order granting or dissolving an injunction, or refusing to grant or dissolve an injunction" (§ 904.1, subd. (a)(6)), and neither *Morehart* nor *Griset* considers this issue. The City says yes, and the Bottinis say no. We are persuaded by the Bottinis' position.

"Whether a particular order constitutes an appealable injunction depends not on its title or the form of the order, but on ' "the substance and effect of the adjudication." ' [Citation.] An injunction is defined as 'a writ or order requiring a person to refrain from a particular act.' (Code Civ. Proc., § 525.) Injunctions also may command a person to perform a particular act." (*PV Little Italy, LLC v. MetroWork Condominium Assn.* (2012) 210 Cal.App.4th 132, 142-143.)

Here, the writ of mandate orders the city council to "set aside its adoption of Resolution Number R-308449 . . . and reconsider the [CEQA] [a]ppeals [by the Planning Group and the Historical Society] in conformance with the views expressed in the attached [o]rder." Thus, it appears the order could be classified as an "injunction" for some purposes. However, writs of mandate customarily order a public entity to take or refrain from taking some specified action, and under the City's theory every writ would be immediately appealable notwithstanding unresolved causes of action between the parties. We reject that notion as violating *Morehart* and *Griset*.

11

Further, while on its face, subdivision (a)(6) of section 904.1 appears to apply to *any* injunction, the statute has been interpreted to make only pendente lite injunctions immediately appealable. (*Art Movers, Inc. v. Ni West, Inc.* (1992) 3 Cal.App.4th 640, 647 (*Art Movers*); *McCarty v. Macy & Co.* (1957) 153 Cal.App.2d 837, 840-841 (*McCarty*).) A pendente lite injunction is intended to maintain the status quo of the parties pending the litigation. It does not determine the merits of the controversy. (*Art Movers,* at p. 646.) For instance, under section 904.1, subdivision (g), the trial court may issue a pendente lite order to " 'stay the operation of the administrative order or decision [under review in the writ proceeding] pending the judgment of the court . . . .' " (*Miller v. City of Hermosa Beach* (1993) 13 Cal.App.4th 1118, 1134, fn. 12 [discussing § 904.1, subdivision (g)'s predecessor].) "Immediate appeal is necessary to review orders granting or denying pendente lite injunctions, because such orders cannot be reviewed on an appeal from the final judgment." (*Art Movers,* at p. 647.)

"A permanent injunction is very different from a pendente lite injunction. . . . A permanent injunction is not issued to maintain the status quo but is a final judgment on the merits." (*Art Movers, supra,* 3 Cal.App.4th at p. 646.) It may be reviewed on appeal of the final judgment. (*Ibid.*) The writ order here is in the nature of a permanent injunction. It is not intended to maintain the status quo, it is a determination on the merits of the petition for writ of mandate. To comply with the writ, the city council has no effective choice other than denying the CEQA appeals of the Planning Group and the Historical Society on the ground the Bottinis' proposed project is exempt from CEQA review.

12

III

The City contends immediate review is required because it is in a predicament:  it must either comply with the writ and risk waiving its right to challenge it on appeal, or not comply with it and risk a contempt finding by the trial court.  The City cites *MHC Operating Limited Partnership v. City of San Jose* (2003) 106 Cal.App.4th 204, 214 (*MHC*), which explains "[a] case is moot when the decision of the reviewing court 'can have no practical impact or provide the parties effectual relief.  [Citation.]'  [Citation.] 'When no effective relief can be granted, an appeal is moot and will be dismissed.' "  In *MHC,* the court held it could not grant the public entity any effective relief from a judgment on a petition for writ of mandate because "it has already complied with the writ." (*Ibid.*)

Similarly, *City of Carmel-by-the-Sea v. Board of Supervisors* (1982) 137 Cal.App.3d 964, 970 explains:  "Upon the trial court's issuance of its judgment granting the peremptory writ, the Board [of Supervisors] had two options available to it:  either to appeal that judgment or to comply with it.  To the extent that the Board [of Supervisors] voluntarily elected to follow the latter course, it waived its right to appeal."  Neither *MHC* nor *Carmel-by-the-Sea*, however, pertained to the one final judgment rule under section 904.1.  In those cases, there was no dispute that the appeals were from final appealable judgments. (*MHC, supra,* 106 Cal.App.4th at p. 214; *Carmel-by-the-Sea,* at p. 970.)

The City's concern presumably arises from the manner in which the court abated the Bottinis' inverse condemnation cause of action.  In its demurrer, the City argued the

13

claim was premature because "there has been no final decision on their permit application." In opposition to the City's demurrer, the Bottinis argued the "City misapprehends the nature of the taking" alleged in their complaint, and they were required to bring their cause of action for inverse condemnation in conjunction with their petition for writ of mandate. According to the Bottinis, the inverse condemnation cause of action is not premised on a final permit decision, but rather on the theory that the city council's grant of the CEQA appeals caused delay in development and constitutes a compensable temporary taking.

An action may be abated for prematurity (*Edwards v. Container Kraft Carton & Paper Supply Co.* (1958) 161 Cal.App.2d 752, 756), but the Bottinis' inverse condemnation cause of action was not premature. To the contrary, claims for damages arising from administrative action must ordinarily be raised at the same time a petition for writ relief is filed. "The requirement that challenges to administrative actions constituting takings be brought initially by administrative mandamus assures that the administrative agency will have the alternative of changing a decision for which compensation might be required. If no such early opportunity were given, and instead, persons were permitted to stand by in the face of administrative actions alleged to be injurious or confiscatory, and three or five years later, claim monetary compensation on the theory that the administrative action resulted in a taking [of property] for public use,

14

meaningful governmental fiscal planning would become impossible." (*Patrick Media Group, Inc. v. California Coastal Com.* (1992) 9 Cal.App.4th 592, 612.)[4]

It is true that the Bottinis' inverse condemnation claim is dependent on the outcome of the writ petition, but the court could merely have tried them in logical order. Now that the court has granted the writ, the inverse condemnation claim is ripe for resolution. There is no point in further delaying resolution of the inverse condemnation claim until the City returns the writ because as a practical matter, the writ does not give the city council any wiggle room: it must deny the CEQA appeals for lack of evidence to support a finding the Bottinis' proposed project is *not* exempt from CEQA review. In other words, the alleged temporary taking, *if any* (see *Landgate, Inc. v. California Coastal Com.* (1998) 17 Cal.4th 1006, 1021) is now subject to proof. The City is not required to comply with the writ pending trial of the inverse condemnation claim and any appeal of a final judgment.[5]

---

[4] "In some cases, all of the evidence necessary to establish a taking claim may have been presented in the administrative proceeding. If it was not possible for the landowner to present that evidence, it may be introduced in the mandate proceeding. . . . Thus, the trial court is able to resolve the taking claim in the mandate proceeding." (*Hensler v. City of Glendale* (1994) 8 Cal.4th 1, 15.) "[T]he right to jury trial applies in inverse condemnation actions, but that right is limited to the question of damages." (*Ibid.*)

[5] Because we do not reach the merits, we deny the City's opposed request that we take judicial notice of the videotape of the city council's September 23, 2013, meeting.

DISPOSITION

The appeal is dismissed.  The Bottinis are entitled to costs on appeal.


HALLER, J.

WE CONCUR:


McCONNELL, P. J.


AARON, J.