Filed 1/24/18; pub. order 2/20/18 (see end of opn.)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| M.N.,<br><br>    Plaintiff and Appellant,<br><br>          v.<br>MORGAN HILL UNIFIED SCHOOL DISTRICT et al.,<br><br>    Defendants and Respondents. | H043343<br>(Santa Clara County<br>Super.Ct.No. 1-15-CV285644) |

In March 2015, the principal of Martin Murphy Middle School (School) in Morgan Hill recommended that M.N. (then, a 13-year-old boy in the seventh grade) be expelled. The recommendation was based upon allegations that M.N. had committed sexual assault or sexual battery upon a 13-year-old female student (Victim) on multiple occasions while the two of them were riding on a School bus.[1] An administrative panel of the Morgan Hill Unified School District (District) conducted an evidentiary hearing and recommended that M.N. be expelled from the District for one calendar year, finding that he had committed or attempted to commit sexual assault or committed sexual battery, and also committed sexual harassment. The District's Governing Board (Board) adopted the panel's recommendation. M.N.'s administrative appeal to the Santa Clara County Board of Education (County Board) was denied.

---

[1] We use the term "Victim" to identify the girl as a matter of convenience and because her identity has not been, and should not be revealed in the record. In doing so, we do not prejudge the merits of the administrative findings that are the subject of this appeal.

M.N. filed a petition for writ of mandate challenging the expulsion decision. On December 7, 2015, the superior court concluded there was substantial evidence to support the administrative finding that M.N. had committed sexual battery under which the District was required by statute to expel the student for one year. The court nonetheless granted a peremptory writ and remanded the case to the District to consider the sole issue of whether the evidence justified it exercising its statutory discretion to suspend the order of expulsion.

M.N.'s primary contention on appeal is that the superior court erred in finding there was substantial evidence to support the District's finding that M.N. had committed misdemeanor sexual battery, a finding that carried with it mandatory expulsion. He asserts that the District's sexual battery finding was unsupported by any competent evidence of the element of specific intent—i.e., that M.N.'s unwanted touching of an intimate part of Victim was "for the specific purpose of sexual arousal, sexual gratification, or sexual abuse" (Pen. Code, § 243.4, subd. (e)(1)). He contends that proof of such specific intent was based entirely upon hearsay.

We conclude that there was substantial evidence—including competent, admissible, nonhearsay evidence—to support the District's finding that M.N. committed a sexual battery. And, as discussed below, we reject M.N.'s remaining claims of error that (1) the District's decision cannot stand because it failed to make factual findings, and (2) the superior court's decision upholding the District's sexual battery finding was allegedly based on the court's conclusion that M.N.'s awareness of the harmfulness of his actions satisfied the specific intent element of that offense. Accordingly, we will affirm the judgment.

2

## I.    PROCEDURAL BACKGROUND

### A.    Administrative Proceedings

On or about March 5, 2015,[2] School Principal Heather Griffin suspended M.N. She stated in the notice of suspension that under Education Code section 48915, subdivision (c), M.N. was subject to mandatory expulsion for "[s]exual assault or sexual battery (commit or attempt to commit)."[3]  On March 6, Principal Griffin made an expulsion recommendation to the director of student services based upon M.N.'s violations of section 48915, subdivision (c)(4), and section 48900, subdivisions (k), (n), and (t)(2); she specifically stated that M.N. had committed sexual battery upon another student.

In her March 6 discipline incident report, Principal Griffin summarized that she was informed before school commenced on March 5 that a female student had been tripped by boys on the bus on March 4, and the bus driver, upon speaking with the female student, was concerned that multiple boys had touched her inappropriately.  The female student, when interviewed by Griffin and a Morgan Hill Police Officer, stated she had asked the boys, including M.N., numerous times to stop touching her, but they did not comply with her requests.  As further reported by Griffin in her discipline incident report, M.N. was called in as a potential suspect and admitted that on a "handful" of occasions, he had "touch[ed] the female student on her breasts and buttocks [and had made] comments of a sexual nature towards her."

---

[2] All dates hereafter are 2015 unless otherwise specified.

[3] All further statutory references are to the Education Code unless otherwise stated.

On March 9, M.N.'s parents were provided with a notice of an administrative hearing. On the same date, the District provided M.N.'s parents with, inter alia, the documents to be presented at the expulsion hearing.

The matter then proceeded to hearing on June 11 before a three-member administrative hearing panel (Panel). Both the District and M.N. were represented by counsel. Three witnesses testified in the proceedings: Principal Griffin, M.N., and M.N.'s mother. Additionally, the Panel received certain documents: the expulsion recommendation, discipline incident report, a discipline incident list and incident summary, the notice of suspension, student statements, attendance report, and teacher observation checklists.[4] On or about June 12, the Panel recommended to the District that M.N. be expelled from the District for one calendar year based upon his commission of acts of sexual battery (violation of §§ 48900 and 48915, subd. (c)(4)) and sexual harassment (violation of § 48900.2). The Board adopted the Panel's recommendation on June 23. M.N. appealed the Board's decision. The County Board heard the case on August 12, and it issued a written decision on August 18 denying M.N.'s appeal.

## B.     Court Proceedings

On September 15, M.N. filed a petition in the court below under Code of Civil Procedure section 1094.5 for writ of administrative mandamus (writ petition) against the District and County Board. He alleged that the expulsion decision was invalid because the District and County Board, in finding he had committed sexual battery, had relied exclusively upon hearsay evidence to prove that M.N.'s specific intent was sexual in nature. The finding, M.N argued, therefore ran afoul of section 48918, subdivision (f)(2),

---

[4] Although it was not formally introduced at the commencement of the hearing, M.N.'s counsel referred extensively to a 16-page "Incident Report" (police report) prepared by Officer Jeff Brandon of the Morgan Hill Police Department. M.N.'s counsel provided a copy of the police report to the Panel at the hearing.

which provides that "no evidence to expel shall be based solely upon hearsay evidence." M.N. submitted a declaration attaching a number of documents from the administrative proceedings, including the transcript of the hearing before the Panel.

The District and the County Board filed answers to the writ petition, and the District filed a memorandum in opposition to the relief sought in the writ petition.[5] After a hearing, the court issued its order on December 7. The court concluded there was substantial nonhearsay evidence in the administrative record to support the finding that M.N. had committed misdemeanor sexual battery under Penal Code section 243.4, subdivision (e). The court held further that the record did not contain substantial evidence to support the District's finding supporting expulsion that " 'due to the nature of the act, the presence of the pupil causes a continuing danger to the public safety of the pupil or others.' " The court therefore ordered that a peremptory writ be "granted on the basis that the findings were inadequate on the sole issue of punishment of the Petitioner and the matter is remanded to the agency to prepare additional and adequate findings on that issue after reopening the proceedings in their entirety."

The District filed a motion for reconsideration or for clarification of the order pursuant to Code of Civil Procedure section 1008. It argued that remand was unnecessary and inappropriate because of the court's finding that there was substantial evidence supporting the District's conclusion that M.N. had committed sexual battery in violation of section 48900, subdivision (n). The District contended that such a violation carries with it mandatory expulsion under section 48915, subdivisions (c) and (d). Therefore (it argued), the District's secondary findings that M.N.'s presence "cause[d] a continuing danger to the public safety of the pupil and others"—specified in section

[5] Although the County Board was a respondent below, it did not elect to participate in this appeal by submitting a respondent's brief.

48915, subdivision (e)(2) for offenses (such as sexual harassment) for which the punishment of expulsion is discretionary—were unnecessary to the outcome of the case.

After extensive briefing and argument, on February 10, 2016, the court denied the motion for reconsideration, but it modified and clarified its prior order. It held that "the explained grounds for its original order were incomplete, if not erroneous" in that the court had failed to acknowledge that expulsion for a violation of section 48900, subdivision (n) is mandatory. But the court recited that under section 48917, subdivision (a), the governing board has the discretion to suspend the enforcement of its expulsion order for not more than one calendar year, and there was nothing in the record suggesting that the Board considered suspending the expulsion. The court therefore modified and clarified the original order on the writ petition to provide that the Board on remand must consider whether there was evidence justifying suspension under section 48917, subdivision (a) of the expulsion order. M.N. filed a timely notice of appeal.[6]

## II. DISCUSSION

### A. Administrative Mandamus & Standard of Review

Review of an administrative decision by mandamus is appropriate where the hearing in the underlying administrative proceeding was mandatory, evidence was required to be taken in the proceeding, and there was discretion vested in the body determining the matter in deciding contested factual issues. (Code Civ. Proc., § 1094.5, subd. (a).) A court reviewing an agency's decision under Code of Civil Procedure section 1094.5 is guided by the following: "The inquiry in such a case shall extend to the questions whether the respondent has proceeded without, or in excess of jurisdiction;

---

[6] In its appellate brief, the District explained that "[t]he parties agreed to stay and not proceed with [the superior court's directed] limited remand unless or until final resolution of this appeal." M.N. does not challenge this assertion in his reply brief, and we therefore accept the District's representation of the procedural status of the case.

6

whether there was a fair trial; and whether there was any prejudicial abuse of discretion. Abuse of discretion is established if the respondent has not proceeded in the manner required by law, the order or decision is not supported by the findings, or the findings are not supported by the evidence." (Code Civ. Proc., § 1094.5, subd. (b).)

A challenge to a decision that the findings are not supported by the evidence in the administrative record is reviewed by the trial court under either the substantial evidence standard or the independent judgment standard. (*Strumsky v. San Diego County Employees Retirement Assn.* (1974) 11 Cal.3d 28, 32 (*Strumsky*); see Code Civ. Proc., § 1094.5, subd. (c).)[7] Subdivision (c) of Code of Civil Procedure section 1094.5 does not identify the cases in which the independent judgment standard, rather than the substantial evidence standard, applies. (*Fukuda v. City of Angels* (1999) 20 Cal.4th 805, 811 (*Fukuda*).) But our high court has held that the independent judgment standard applies to cases in which "an administrative decision affects a right which has been legitimately acquired or is otherwise 'vested,' and when that right is of a fundamental nature from the standpoint of its economic aspect or its 'effect . . . in human terms and the importance . . . to the individual in the life situation.' " (*Strumsky*, *supra*, at p. 34, quoting *Bixby v. Pierno* (1971) 4 Cal.3d 130, 144 (*Bixby*).) If the decision "substantially affect[s]" that fundamental vested right, the trial court reviews the decision for legal errors and conducts a limited trial de novo of the evidence presented in the administrative proceeding and any evidence wrongfully excluded by the agency. (*Bixby*, *supra*, at pp. 143-144 & fn. 10.)

---

[7] "Where it is claimed that the findings are not supported by the evidence, in cases in which the court is authorized by law to exercise its independent judgment on the evidence, abuse of discretion is established if the court determines that the findings are not supported by the weight of the evidence. In all other cases, abuse of discretion is established if the court determines that the findings are not supported by substantial evidence in the light of the whole record." (Code Civ. Proc., § 1094.5, subd. (c).)

M.N. did not assert below that the independent judgment standard applied. Nor does he make that claim on appeal. The District, however, on appeal asserts that the superior court, based upon a finding that a fundamental vested right was substantially affected, exercised independent judgment to review the administrative decision. But the record does not support this contention. Rather, the court stated that in reaching its decision, it "consider[ed] whether there is substantial evidence in light of the whole record to support the [District's] findings." The substantial evidence standard is the appropriate standard of review here. (See *Helena F. v. West Contra Costa Unified School Dist.* (1996) 49 Cal.App.4th 1793, 1800 [Constitutional right to free education does not encompass right to attendance at school of pupil's choice or the one "geographically convenient to the parent"].)

Under this standard, the trial court will affirm the administrative decision if it is supported by substantial evidence from a review of the entire record, resolving all reasonable doubts in favor of the findings and decision. (*Committee to Save Hollywoodland Specific Plan v. City of Los Angeles* (2008) 161 Cal.App.4th 1168, 1182 (*Committee to Save Hollywoodland*).) The court must "accept all evidence which supports the successful party, disregard the contrary evidence, and draw all reasonable inferences to uphold the [administrative decision]. [Citation.] Credibility is an issue of fact for the finder of fact to resolve [citation], and the testimony of a single witness, even that of a party, is sufficient to provide substantial evidence to support a finding of fact. [Citation.]" (*Doe v. Regents of the University of California* (2016) 5 Cal.App.5th 1055, 1074 (*Doe*).) Issues of law related to the administrative decision, such as interpretation of statutes and regulations, are addressed de novo by the court. (*Hoitt v. Department of Rehabilitation* (2012) 207 Cal.App.4th 513, 522.) Under this "deferential" standard, the court presumes the correctness of the administrative ruling. (*Patterson Flying Service v. California Dept. of Pesticide Regulation* (2008) 161 Cal.App.4th 411, 419 (*Patterson*

8

*Flying Service*); see also *Doe*, *supra*, at p. 1073 [substantial evidence standard is "extremely deferential standard of review"].)

Review by the appellate court of such matters is governed by the same substantial evidence standard, irrespective of whether the controversy involves a fundamental vested right. (*Fukuda*, *supra*, 20 Cal.4th at p. 824.) Where the trial court properly applies the substantial evidence standard, " 'the appellate court focuses on the findings made by the agency rather than on findings made by the superior court.' [Citation.]" (*MHC Operating Limited Partnership v. City of San Jose* (2003) 106 Cal.App.4th 204, 218 (*MHC Operating*).) We will therefore—contrary to the District's urging that the proper focus is "whether substantial evidence supports the *Superior Court's* decision" (original italics)—consider whether substantial evidence supported the District's decision.

### B.     Public School Disciplinary Proceedings

The rights of students and staff to a safe school environment is embedded in our state's Constitution: "[T]he right to public safety extends to public and private primary, elementary, junior high, and senior high school, and community college, California State University, University of California, and private college and university campuses, where students and staff have the right to be safe and secure in their persons." (Cal. Const., art. I, § 28, subd. (a)(7); see also *In re William G.* (1985) 40 Cal.3d 550, 563 ["school premises . . . must be safe and welcoming"].) This constitutional provision confers a duty upon school officials "to protect students from foreseeable injury at the hands of third parties acting negligently or intentionally." (*C.A. v. William S. Hart Union High School Dist.* (2012) 53 Cal.4th 861, 870, fn. omitted; see also *id.* at p. 870, fn. 3.) As summarized by one court, "A special relationship is formed between a school district and its students resulting in the imposition of an affirmative duty on the school district to take all reasonable steps to protect its students." (*M.W. v. Panama Buena Vista Union School Dist.* (2003) 110 Cal.App.4th 508, 517.) A school district thus has the power to suspend

9

or expel students in order to maintain discipline in schools. (*Abella v. Riverside Unified Sch. Dist.* (1976) 65 Cal.App.3d 153, 167; see also *Fremont Union High Sch. Dist. v. Santa Clara County Bd. of Education* (1991) 235 Cal.App.3d 1182, 1187 ["[e]xpulsion is an administrative penalty designed to promote student safety"].)

We provide an overview of the statutory framework governing student disciplinary proceedings in public schools, relying upon a decision of the Fourth District, Division One (with updates for statutory revisions). "The Legislature has developed a comprehensive statutory scheme governing the suspension and expulsion of students. Education Code section 48900 states a student may be 'suspended from school or recommended for expulsion' for committing one of [20] identified offenses.[8] Three other statutes provide additional grounds for expulsion: section 48900.2 ('sexual harassment'); section 48900.3 ('hate violence'); and section 48900.4 ('harassment, threats, or intimidation').) These three statutes, together with section 48900, establish the exclusive grounds for which a student may be suspended or expelled. [Citations.]" (*T.H. v. San Diego Unified School Dist.* (2004) 122 Cal.App.4th 1267, 1276, fns. omitted (*T.H.*).)

---

[8] The current version of section 48900 reads in relevant part: "A pupil shall not be suspended from school or recommended for expulsion, unless the superintendent of the school district or the principal of the school in which the pupil is enrolled determines that the pupil has committed an act as defined pursuant to any of subdivisions (a) to (r), inclusive: [¶] . . . [¶] (n) Committed or attempted to commit a sexual assault as defined in Section 261, 266c, 286, 288, 288a, or 289 of the Penal Code or committed a sexual battery as defined in Section 243.4 of the Penal Code. [¶] . . . [¶] (s) A pupil shall not be suspended or expelled for any of the acts enumerated in this section unless the act is related to a school activity or school attendance occurring within a school under the jurisdiction of the superintendent of the school district or principal or occurring within any other school district. . . ."

"Another statutory provision, section 48918, sets forth mandatory procedures that a school district must follow before the district may expel a student who has committed one of these identified expulsion offenses. . . . Every student is entitled to a hearing to 'be held within 30 schooldays after the date the principal or superintendent of schools determines that the pupil has committed any of the acts' permitting expulsion. [(§ 48918, subd. (a)(1).)] At the hearing, the school district must permit the student and parent to appear, be represented by legal counsel or a nonattorney adviser, obtain copies of all documents to be presented, [confront and question any witnesses presented at the hearing,] and present oral and documentary evidence. (§ 48918, subd. (b)(5).)" (*T.H.*, *supra*, 122 Cal.App.4th at pp. 1276-1277.) And "[t]echnical rules of evidence shall not apply to the hearing, but relevant evidence may be admitted and given probative effect only if it is the kind of evidence upon which reasonable persons are accustomed to rely in the conduct of serious affairs." (§ 48918, subd. (h)(1).) An expulsion decision must be "supported by substantial evidence showing the pupil committed any of the acts enumerated in Section 48900." (*Ibid.*)

Although the governing school board is charged with conducting expulsion hearings (§ 48918, subd. (c)(1)), it may delegate this function to a panel of three or more certificated, impartial persons. (§ 48918, subd. (d).) The panel must determine within three school days after the hearing whether to recommend the expulsion of the pupil to the governing board. (§ 48918, subd. (e).)

Irrespective of whether the hearing is conducted by the governing board, a hearing officer, or an administrative panel, the expulsion of a student may occur only through final action taken in a public hearing by the governing board. (§ 48918, subd. (j).) A final notice of expulsion must include notice of the right to appeal the decision to the county board of education. (§ 48918, subd. (j)(1).)) The school board's expulsion decision "shall be based upon substantial evidence relevant to the charges adduced at the

11

expulsion hearing," and except as specifically provided in section 48918, "no evidence to expel shall be based solely upon hearsay evidence." (§ 48918, subd. (f)(2).))

"[T]he Legislature [has also] specified the circumstances for triggering an expulsion hearing and the findings that must be made at these hearings. These circumstances—grouped in three primary categories—are set forth in section 48915." (*T.H.*, *supra*, 122 Cal.App.4th at p. 1277.) We are concerned here with only the first of those categories described in *T.H.* "[W]ith respect to certain very serious offenses, the Legislature provided that '[t]he principal or superintendent of schools *shall . . .* recommend expulsion of a pupil that he or she determines has committed any of the [specified] acts at school or at a school activity off school grounds." (*Id.* at pp. 1277-1278, citing § 48915, subd. (c), original italics.) One such very serious offense requiring the recommendation of expulsion is the offense charged here, namely, committing a sexual battery as defined in section 48900, subdivision (n). (§ 48915, subd. (c)(4).) The governing board is required to expel the student if there is a finding that he or she committed one of the offenses enumerated in subdivision (c). (§ 48915, subd. (d).)

## C.   Sufficiency of the Evidence Supporting Administrative Decision

### 1.   Introduction

M.N. contends that the District's decision that he committed sexual battery was without support because there was no competent evidence to support the specific intent element of the crime, i.e., the act was committed "for the specific purpose of sexual arousal, sexual gratification, or sexual abuse." (Pen. Code, § 243.4, subd. (e)(1).) He acknowledges that he admitted at the administrative hearing the other elements of the offense—i.e., that he touched an intimate part of another person against her will (Pen. Code § 243.4, subd. (e)(1)). But, M.N. contends, he specifically denied in his testimony at the hearing that he acted with the requisite specific intent. He asserts that "the only evidence that [the District] presented of M.N.'s purpose in touching the young woman

12

was written hearsay," and this was wholly insufficient to support a finding that he had committed a sexual battery warranting expulsion.

The District responds that M.N. has effectively argued that the District was required to establish specific intent through direct evidence of the actor's "intent to insult, humiliate, or intimidate the victim," and that such a position is contrary to established law that intent may be "proven by surrounding circumstances." The District responds further that M.N. "attempts to sell the position that only non-hearsay evidence may support a decision to expel."

The Education Code, as M.N. acknowledges, does not require the District to base its decision to expel a student strictly upon rules of evidence governing a trial. "Technical rules of evidence shall not apply to the hearing." (§ 48918, subd. (h)(1).) The statute goes on to provide: "[B]ut relevant evidence may be admitted and given probative effect only if it is the kind of evidence upon which reasonable persons are accustomed to rely in the conduct of serious affairs." (*Ibid.*; cf. Gov. Code, § 11513, subd. (c) [hearings under Administrative Procedures Act "need not be conducted according to technical rules relating to evidence and witnesses . . . . Any relevant evidence shall be admitted if it is the sort of evidence on which responsible persons are accustomed to rely in the conduct of serious affairs, regardless of the existence of any common law or statutory rule which might make improper the admission of the evidence over objection in civil actions"].) Further, under subdivision (f)(2) of section 48918, subject to certain exceptions not relevant here, "no evidence to expel shall be based solely upon hearsay evidence." And an expulsion decision by the governing board of a school district is subject to the overarching requirement that it be "supported by substantial evidence showing the pupil committed any of the acts enumerated in Section 48900." (§ 48918, subd. (h)(1); see also *id.*, subd. (f)(2) [board's expulsion decision "shall be based upon substantial evidence relevant to the charges adduced at the" hearing].)

13

M.N., as noted, argues that the only evidence supporting the District's position that he acted with the specific intent "of sexual arousal, sexual gratification, or sexual abuse" (Pen. Code, § 243.4, subd. (e)(1)) was hearsay that is traditionally inadmissible in court proceedings.  And M.N.'s key argument presented below was that the statutory provision that "no evidence to expel shall be based solely upon hearsay evidence" (§ 48918, subd. (f)(2)) "requires that non-hearsay [evidence] support each element of the offense."  (Footnote omitted.)

As we discuss below, there was substantial evidence supporting the Board's decision that M.N. should be expelled for sexual battery.  This evidence included both nonhearsay evidence and hearsay evidence showing that M.N. acted "for the specific purpose of . . . sexual abuse" of the victim.  (Pen. Code, § 243.4, subd. (e)(1).)  We will therefore reject M.N.'s sufficiency-of-the-evidence challenge, founded upon the position that the only evidence of specific intent supporting the District's position was hearsay that would traditionally be inadmissible in court proceedings.  Moreover, because we conclude there *was* nonhearsay evidence of specific intent, we may assume for purposes of our analysis only—but do not decide the merits of—M.N.'s claim that under subdivision (f)(2) of section 48918, there must be some nonhearsay evidence of each element of a charged offense to support an expulsion decision.  (See *Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 845, fn. 5 [appellate courts will not address issues whose resolution is unnecessary to disposition of appeal].)

### 2.    *Sexual Battery*

Before reviewing the evidence presented to the Board, we describe the elements of the offense at issue in this appeal that was one of the grounds for the expulsion order,

14

namely, misdemeanor sexual battery.  This review will focus upon the specific intent element contested by M.N.[9]

Misdemeanor sexual battery is defined as follows:  "(1) Any person who touches an intimate part of another person, if the touching is against the will of the person touched, and is for the specific purpose of sexual arousal, sexual gratification, or sexual abuse, is guilty of misdemeanor sexual battery, punishable by a fine not exceeding two thousand dollars ($2,000), or by imprisonment in a county jail not exceeding six months, or by both that fine and imprisonment. . . .  [¶] (2) As used in this subdivision, 'touches' means physical contact with another person, whether accomplished directly, through the clothing of the person committing the offense, or through the clothing of the victim."  (Pen. Code, § 243.4, subd. (e).)  Sexual battery is a specific intent crime.  (*People v. Chavez* (2000) 84 Cal.App.4th 25, 29.)

As argued by the parties both below and on appeal, the specific intent element under Penal Code section 243.4, subdivision (e)(1) at issue here is "for the specific purpose of . . . sexual abuse."  The court in *In re Shannon T.* (2006) 144 Cal.App.4th 618 (*Shannon T.*) addressed the meaning of "sexual abuse" in this context.  There, the minor (14 years old) approached a 16-year-old girl at school, directed that she get off the phone,

---

[9] The District found that M.N. violated section 48900 because he (1) committed or attempted to commit a sexual assault (as defined under several specified sections of the Penal Code), or committed a sexual battery under Penal Code 243.4, and (2) committed sexual harassment as defined under section 212.5.  Unlike sexual battery, which carries with it a mandatory punishment of expulsion (see § 48915, subds. (c), (d)), sexual harassment is one for which a student may be subject to a discretionary punishment of expulsion (see §§ 48900.2, 48915, subd. (e)).  M.N. challenged the entire decision in his writ petition, including the finding that he had committed sexual harassment.  But the superior court in its order did not address the District's sexual harassment finding, and M.N. does not include that District finding in his challenge on appeal.  Accordingly, the District's sexual battery finding is the only one with which we are concerned here.

called her " '[his] ho,' " and then after the girl walked away from him, saying " 'whatever,' " slapped her face, grabbed her arm, and pinched her breast, causing her to cry and leaving a large bruise. (*Id.* at p. 620.) The minor challenged the juvenile court's sexual battery finding, arguing there was no specific intent because he and the victim had simply been "engaged in 'playful hitting' of each other." (*Id.* at p. 621.) After observing that the statute did not define " 'sexual abuse' " and that no published case had addressed the issue (*ibid.*), the appellate court concluded that " 'sexual abuse' includes the touching of a woman's breast, without consent, for the purpose of insulting, humiliating, or intimidating the woman, even if the touching does not result in actual physical injury." (*Id.* at p. 622, fn. omitted.) The court affirmed the juvenile court's finding and dispositional order, concluding that "the minor's purpose in pinching the victim's breast [could] be inferred from the act itself together with its surrounding circumstances [citation]" (*ibid.*), and that the "circumstances support[ed] a conclusion that the minor pinched the girl's breast for the specific purpose of insulting, humiliating, intimidating, and even physically hurting her." (*Id.* at pp. 623.)

The principle enunciated by the court in *Shannon T.* that the actor's purpose may be inferred from the act itself and the surrounding circumstances is based upon the well-recognized proposition that "as to the specific intent prong . . . [,] '[i]ntent is rarely susceptible of direct proof and usually must be inferred from the facts and circumstances surrounding the offense.' [Citation.] 'Evidence of a defendant's state of mind is almost inevitably circumstantial, but circumstantial evidence is as sufficient as direct evidence to support a conviction.' [Citation.]" (*People v. Rios* (2013) 222 Cal.App.4th 542, 567-568 (*Rios*).) Specific intent may be proved from inferences drawn from the facts and circumstances surrounding the offense in a variety of contexts—including, as noted in *Shannon T., supra*, 144 Cal.App.4th at page 622, sexual battery. (See, e.g., *People v. Holt* (1997) 15 Cal.4th 619, 669-670 [entering premises with specific intent to commit

16

felony or theft, i.e., burglary]; *In re Gary H.* (2016) 244 Cal.App.4th 1463, 1478 [loitering on school grounds with specific intent to commit an assault]; *People v. Lopez* (2015) 240 Cal.App.4th 436, 453 [threat made with intent of placing victim in imminent fear of own safety or family's safety, i.e., stalking]; *People v. Misa* (2006) 140 Cal.App.4th 837, 842 [infliction of great bodily injury with specific " 'intent to cause cruel or extreme pain and suffering for the purpose of revenge, extortion, persuasion, or for any sadistic purpose,' " i.e., torture].)

### 3. *Evidence Presented at Administrative Hearing*

#### a. **Griffin Testimony**

On March 2, Susan Becerra began driving a new bus route—one identified by witnesses as "bus route number 8." Becerra had been warned that there was a group of students from the Diana Avenue stop who, because of their chronic misbehavior, had been instructed by the previous driver to sit in the front of the bus. On two successive days, she observed a girl, Victim, trip as she and other girls got off the bus. Thereafter, on March 5, Becerra talked to the girls as they exited the bus. After identifying Victim as the girl who had been tripped, she told Becerra that she had tripped because multiple boys, including M.N., had been touching her inappropriately.

Thereafter and immediately before class started that day at the School, Becerra approached Principal Griffin and informed her that a female student accompanying her, Victim, had been subjected to inappropriate treatment on the bus. Griffin then took Victim to her office and contacted the Morgan Hill Police Department. From Griffin's observation, Victim was very scared; she was "shaking, sad, and withdrawn." Victim was concerned about what would happen to her at school. Griffin testified "there were some comments at certain points that were made to her by these boys that it was not in her best interests to be telling on them." Victim said she was afraid of the boys.

17

Victim told Principal Griffin that over the course of a few months, three boys, one being M.N., had touched her inappropriately while she was riding the bus. They intentionally tripped her so that they could touch her while she was on the bus floor. The boys, on some occasions when they touched her, made moaning noises. Victim said that she had asked the boys, including M.N., repeatedly to stop, saying, " 'It hurts me,' " but they would not stop. Victim also said there were times after she exited the bus that they boys would make gestures and comments about her breasts, including comments about how "it felt so good" and they intended to touch her again. Victim said that she asked her female friends to sit next to her on the bus or walk with her to create a barrier between her and the boys.

After Principal Griffin spoke briefly with Victim and notified the police, she asked Victim to write a statement. The statement by Victim read in part: "Whenever I get on the bus, I always get grabbed by three boys [name redacted], [M.N.], and sometimes [name redacted]. [T]hey usually grab me all the time and I tell them not to and the[y're] always grabbing me in the boobs, or the butt and onetime [*sic*] one of them grabbed me or touched my private part. I always tell them to stop but they never do and sometimes when they grab me I fall or trip and I always end up [scraping] my knee[;] it hurts a lot when they do that and they just tell me [']it feels so good['] but it hurts me and they don't seem to really care . . . . Also it makes me feel bad because they won't listen or stop. Yesterday, they grabbed my butt and my boobs but I don't know which one grabbed which. They usually say [']but the[y're] so big['] or they say [']it feels so good['] or they . . . make moaning noises sometimes. They knock on the window sometimes after I leave and they . . . make their hands under to show that I have big boobs. [T]hey usually look for me and say 'is she here' and if [I] am they say [']get ready.['] . . . [T]hey start to grab me once I get off and they make . . . weird faces at me. [T]hey make hand gestures as if the[y're] grabbing my boobs."

18

Principal Griffin was also present on March 5 when the police interviewed four witnesses and when each wrote statements that day. Witness 1[10] said she had witnessed three boys, including M.N., touching Victim inappropriately on her buttocks and breasts. Witness 1 said the boys tried to sit next to Victim so that they could grab her, and they also grabbed her when she exited the bus. Witness 1 also stated that she had heard Victim say "no" to them, but they ignored her. Victim asked Witness 1 and another person to walk with her on the bus so that the boys could not touch her.

Witness 2 stated he had seen two boys, including M.N., grabbing Victim's buttocks and breasts, and that they did so once or twice a week even though Victim told them to stop. Witness 2 said the boys laughed when Victim walked off the bus. Witness 2 also stated that Victim did not want to get off the bus and that she was afraid of the boys. He said a third boy had grabbed Victim's buttocks on one occasion, on March 4.

Witness 3 stated that for a few weeks, she had witnessed three boys, including M.N., grabbing Victim's buttocks and breasts, and laughing after doing so. Witness 3 said the boys would comment on Victim having "big boobs and a big butt" and Witness 3 said they would "squeeze [Victim's buttocks] and . . . pok[e] it." Witness 3 also stated that when Victim fell down, the boys touched her again. Witness 3 said she overheard the boys planning what they were going to do when Victim got off the bus.

Witness 4 stated that since November 2014, she had witnessed students tripping Victim and grabbing her buttocks and breasts when she got off the bus. Witness 4 said she would regularly overhear the students planning to grab Victim after confirming that she was on the bus. Witness 4 noted further that the students told Victim that "she has big boobs and a big butt," made gestures when Victim left the bus as "if [they] were

---

[10] The witnesses are identified as numbers one through four, based upon the order in which they were mentioned in the testimony of Principal Griffin.

grabbing her boobs," laughed and waved at her, and commented that "this feels good" as they grabbed her breasts. Witness 4 said that Victim had asked her sometimes to walk behind her so the students wouldn't grab Victim. Although not mentioned in Witness 4's written statement, according to Griffin's testimony, Witness 4 told the police that M.N. was one of the students involved in the conduct toward Victim.

Principal Griffin was also present when the police interviewed the three accused boys, including M.N., on March 5. One of the boys, Boy 1, admitted having grabbed Victim's buttocks and breasts, as well as her crotch. He also admitted laughing, having tripped and harassed Victim when she got off the bus, and having made hand gestures concerning her breasts. Boy 1 also said that M.N. had grabbed Victim's buttocks, and that M.N. had participated in conversations when Victim got on and off the bus.

Boy 2 admitted to the police that he had tripped Victim and touched her buttocks one time. He said he had participated with M.N. in conversations about Victim's breasts and they had laughed and made gestures when Victim left the bus. Boy 2 also said that M.N. had grabbed Victim's buttocks.

Principal Griffin testified that when the police questioned M.N., he was not initially forthcoming. She testified "[i]t took a significant time for [M.N.] to tell the truth." Griffin said that later in the interview after M.N. admitted having touched Victim, he tried "to justify his behavior," and showed less remorse than the two other boys had shown. During the police interview—as Griffin confirmed later in her written discipline incident report—M.N. admitted that on a handful of occasions, he had touched Victim's buttocks and breasts and had made sexual comments directed toward her. Griffin testified that when M.N. gave his statement to the police, he did not mention that his

being bullied or teased by the other boys was the cause of his inappropriate touching of Victim.[11]

Principal Griffin did not personally view videotape footage from the bus obtained by the police. But Griffin was advised by School Resource Officer Brandon, who also authored the police incident report—and Griffin had heard testimony at other hearings— that the videotape footage confirmed that M.N. was a participant with other boys in laughing and joking, in tripping Victim, and in harassing her from bus windows.

Principal Griffin testified that she was familiar with Victim's ongoing issues resulting from the incidents on the bus. Victim required a significant amount of support from the District, in addition to private therapy, and she continued to manifest fear.

### b. M.N. Testimony

M.N. testified at the hearing that he first saw another boy on the bus touching Victim's breasts approximately two months before March 5. He observed a second incident involving another boy about one week later. There continued to be incidents in which boys touched Victim inappropriately that occurred sometimes twice a week or every other week. M.N. knew what they were doing was wrong, but he did not report what was happening to anyone. He was uncertain whether Victim ever told any of the boys to stop.[12] Victim had told him, however, sometime before the inappropriate touching began that she did not like the "Diana bus kids," and she found them to be

---

[11] Griffin acknowledged on cross-examination by M.N.'s counsel that it was recited in the police report describing the interview with M.N. that he "admitted he had touched [Victim's] buttocks approximately 5 times over the last couple of weeks. He said he did it because the other boys were pressuring him to do it and said they would call him a 'chicken or pussy' if he didn't." But Griffin stood by her testimony that M.N. did not tell the police he had been bullied or teased into touching Victim.

[12] M.N.'s response to a panel member to his question on this issue was: "I don't know. Maybe. I don't know if she—not that I know of—."

" 'really annoying.' " M.N. denied that he laughed during these incidents, testifying, "Well, I was laughing, not because they were touching her. Maybe because somebody said something funny."

Approximately one month before March 5, at the urging of other boys, M.N. touched Victim's buttocks. "just grabbed her and slapped her . . . basically lightly touched her." M.N. estimated that he touched Victim on no more than 10 occasions. He testified that he admitted to the police that he had touched Victim's buttocks and one time on the breasts. (He testified he touched Victim on the breasts because another boy grabbed his hand and placed it on her.) He testified that he told the police he had touched Victim "because these boys on the bus were bullying [him] and pressuring [him] to do it."

M.N. testified that he knew what he was doing was wrong. M.N. denied that he laughed after he touched Victim because he had touched her. He admitted he laughed about what someone had said, but did not recall the substance of what was said. He testified that Victim never told M.N. to stop. But whether Victim was addressing him directly to him or not, M.N. may have heard her say something like, " 'Don't touch me.' " He testified that "it was something that was going through [his] head." He explained: "But she—this is going to sound offensive[—] but it seemed like she sort of didn't care."

M.N. testified that he did not touch Victim because he wanted to be sexually aroused. He said that he had had no sexual motive at all. The first time he touched Victim, he did so because he was pressured by a group of boys, who said, " 'Hey, so if you guys don't do this, especially [M.N.] . . . , we're going to call you names or beat you up after you get off the bus.' " M.N. testified that the boys made these comments every time M.N. touched Victim. M.N. never reported to the bus driver or any teacher at school that he was being bullied by the boys on the bus. And none of the boys ever beat M.N. up or struck him. Sometime before M.N. began touching Victim, one or more of

22

the boys knocked the lunch out of M.N.'s hands at School; M.N. did not report the incident.

M.N. testified at the hearing that he has arthritis in his knee, and that for his whole life, he has been teased and called names by his peers. The students who tease him include those who ride the bus with him to School. M.N.'s mother also testified that his medical condition causes him to limp, and that he has had a harder time particularly in the past school year (seventh grade) with students teasing and bullying him. Neither M.N.'s mother nor father ever reported any of this bullying to the School. Principal Griffin confirmed in her testimony that she had never received a report from M.N., his family, or other students that M.N. had been the subject of bullying.

### 4. Substantial Evidence Supported District's Decision

As noted, M.N.'s challenge is limited to the finding that he committed a sexual battery within the meaning of Penal Code section 243.4, subdivision (e)(1) because he committed his admitted acts involving Victim "for the specific purpose of . . . sexual abuse." Our focus is therefore whether, viewing the entire record, there was substantial evidence before the District that M.N. touched Victim inappropriately "for the purpose of insulting, humiliating, or intimidating [her], even if the touching [did] not result in actual physical injury." (*Shannon T.*, *supra*, 144 Cal.App.4th at p. 622, fn. omitted.) And in conducting this analysis, we address M.N.'s claim that there was only hearsay that would traditionally be inadmissible in court proceedings that supported this specific intent element.

There was a wealth of evidence—disregarding for the moment whether it was nonhearsay or hearsay—that M.N. acted "for the specific purpose of sexual abuse." (Pen. Code § 243.4, subd. (e)(1).) Focusing first on nonhearsay evidence, we disagree with M.N. that his testimony at the hearing must be viewed exclusively as negating a finding of specific intent. To be sure, M.N. testified that he did not touch Victim for the purpose

23

of sexual arousal or for any other sexual motive. Rather, he said he did so because he was pressured by other boys' threats of ridicule and physical reprisal. While the District, as trier of fact, may have believed M.N., it is equally possible that it did not. M.N.'s testimony concerning the boys' alleged threats was conclusory and provided nothing by way of specifics other than that they were made by unspecified individuals each time he inappropriately touched Victim. He never reported the threats to anyone and was in fact never beaten up or struck by anyone. Further, although M.N. testified that he told the police his actions were motivated by the boys' pressuring and bullying, Principal Griffin disputed this testimony. She testified that when the police interviewed M.N. in her presence, he did not mention that he had inappropriately touched Victim because he had been repeatedly bullied or teased by other boys.[13] And there was evidence that M.N. was not initially forthcoming in his interview with the police, that he attempted to justify his behavior, and he showed little remorse. The District was therefore free to discount, or even dismiss, M.N.'s testimony that in touching Victim, he did not have the requisite specific intent under Penal Code section 243.4, subdivision (e)(1) because he was motivated only by fear of ridicule or physical harm. (*Doe*, *supra*, 5 Cal.App.5th at pp. 1073, 1074 [reviewing court defers to trier of fact concerning witness credibility issues].)

There was additional nonhearsay evidence at the hearing—chiefly from M.N.'s own testimony—supporting the inferred finding that he acted "for the specific purpose of . . . sexual abuse." (Pen. Code, § 243.4, subd. (e)(1).) First, M.N. admitted that he touched Victim on the buttocks, and that he did so as many as 10 times. Second, he

_____

[13] We note further that although there is a reference in the police report to M.N. saying that other boys told him they would call him names if he did not touch Victim, there is no indication in the report that he told the police that other boys had threatened to physically harm him.

24

admitted he knew what he was doing was wrong and was hurtful to Victim. It may be inferred from the circumstances that M.N., by touching Victim while others on the bus witnessed it, knew that his actions would be humiliating and insulting to Victim. Third, prior to M.N. inappropriately touching Victim, he had witnessed multiple acts of sexual battery upon Victim by other boys on the bus. He knew that their actions were wrong, but he did nothing to stop them and did not report the actions to anyone. Fourth, M.N. admitted laughing during the incidents in which either he or other boys inappropriately touched Victim. Although he denied that his laughter was related to the inappropriate touching, he could not identify what had caused him to laugh. Fifth, although M.N. testified that he never heard Victim tell the other boys or him to stop touching her, the testimony was equivocal. He testified that "[m]aybe" Victim told other boys to stop, and "it was something going through [his] head" that Victim may have said something like " 'Don't touch me.' "

And perhaps most significantly, Principal Griffin testified that M.N., in her presence, admitted to the police on March 5 that in addition to touching Victim's buttocks and breasts, he had directed sexual comments toward her. Plainly, this evidence, had it been offered in court, would have been admissible as a recognized exception to the Hearsay Rule. (See Evid. Code, § 1220.)[14]

M.N.'s purpose was properly "inferred from the [repeated] act[s them]sel[ves] together with [their] surrounding circumstances." (*Shannon T.*, *supra*, 144 Cal.App.4th at p. 622.) Here, based solely upon the above-recited nonhearsay evidence (and evidence constituting an exception to the Hearsay Rule), there was substantial evidence from

---

[14] "Evidence of a statement is not made inadmissible by the hearsay rule when offered against the declarant in an action to which he is a party in either his individual or representative capacity, regardless of whether the statement was made in his individual or representative capacity." (Evid. Code, § 1220.)

25

which the District could infer that M.N. committed the acts "for the specific purpose of . . . sexual abuse." (Pen. Code, § 243.4, subd. (e)(1).) Such an inference that he had "the purpose of insulting, humiliating, or intimidating [Victim]" (*Shannon T.*, *supra*, at p. 622) could be properly made from M.N.'s acts of repeatedly touching Victim's intimate parts without her consent, and the circumstances surrounding those acts—including his knowledge that what he and the other boys were doing was wrong, his permitting the misconduct to go on for months without reporting it, his laughing while the conduct occurred, and his making sexual comments toward Victim. (See *Rios*, *supra*, 222 Cal.App.4th at pp. 567-568 [state of mind generally proved by circumstantial evidence, and therefore intent is ordinarily inferred from facts and circumstances surrounding the offense].) The additional hearsay evidence—including the statements of Victim, four witnesses, and the two other accused boys—while corroborative, was not essential to the District's inferred finding that M.N. acted for the specific purpose of sexual abuse.

M.N. relies on *John A. v. San Bernardino City Unified School District* (1982) 33 Cal.3d 301 (*John A.*) in support of his claim that the District's decision was based entirely upon hearsay and cannot be sustained. He urges that in *John A.*, the Supreme Court "recognized that a school may not rely solely upon written statements from witnesses, which are hearsay and untested by cross-examination, when those witnesses are available to testify live. [Citation.]" In *John A.*, the student was expelled based upon the allegation that he assaulted and injured without provocation two other students during an on-campus fight after a football game. (*Id.* at p. 304.) At the expulsion hearing, the school district presented no witnesses, but instead relied upon a school administrator's report and signed witness statements. (*Id.* at p. 305.) The student denied striking either student, but admitted holding one of them, and "characterized the entire incident as 'play boxing' such as often took place after football practice or games." (*Ibid.*) The administrative panel found that the student had committed an unprovoked attack and

26

recommended expulsion, which recommendation the school board adopted. (*Id.* at p. 306.)

The Supreme Court considered whether the expulsion was improper under relevant provisions of the Education Code, specifically, what are currently subdivision (b)(5) of section 48918 (affording the student the right "to confront and question all witnesses who testify at the hearing"), and subdivision (h)(1) of the same statute ("[t]echnical rules of evidence shall not apply at the hearing, but evidence may be admitted and given probative effect only if it is the kind of evidence upon which reasonable persons are accustomed to rely in the conduct of serious affairs"). (*John A.*, *supra*, 33 Cal.3d at p. 307.) It explained that "[t]he evidence at the hearing was in sharp dispute," and while the student denied striking or kicking the two injured students, neither complainant testified, and the district relied solely on the administrator's report and written witness statements. (*Id.* at p. 308.) The Supreme Court held that under the circumstances, the evidence did not meet the requirements of the statute that the school district show a basis "for expulsion by a preponderance of the evidence upon which reasonable persons are accustomed to rely in the conduct of serious affairs." (*Id.* at p. 308.) The high court reasoned: "While reasonable persons often rely on statements and reports [citation], a reasonable person in the conduct of serious affairs will not rely solely on written statements but will demand that witnesses be produced so that their credibility may be tested and their testimony weighed against conflicting evidence when their testimony appears readily available and there is no substantial reason why their testimony may not be produced. By placing the power of expulsion in the governing board rather than the administrators, the Legislature has manifested its intent that the board not merely review the administrator's decision but determine credibility and weigh evidence. It may not rely on administrative reports when evidence is conflicting and witnesses are readily available." (*Id.* at pp. 307-308.)

27

The circumstances here are distinguishable from those addressed in *John A.* In this case, unlike in *John A.*, the evidence was not "in sharp dispute." (*John A.*, *supra*, 33 Cal.3d at p. 308.) The District claimed that M.N. had engaged in multiple acts of unwanted touching of intimate parts of Victim, and M.N. admitted he had done so, both in statements to the police and at the hearing. Further, M.N. admitted at the hearing that he had observed multiple acts of inappropriate touching of Victim by other boys on the bus, knew it was wrong, and had not reported it. He also admitted at the hearing that he knew his actions were wrong, and that he laughed on occasions when both he and the other boys touched Victim inappropriately. And he admitted during the interview with the police attended by Principal Griffin that he had made comments of a sexual nature to Victim. Thus, as discussed above, the District relied upon nonhearsay evidence (and evidence subject to an exception to the Hearsay Rule), *in addition to* hearsay statements traditionally inadmissible in court proceedings but admissible in expulsion hearings pursuant to section 48918, subdivisions (f)(2) and (h)(1), to support its conclusion that M.N. had committed sexual battery because he had the requisite specific intent when he inappropriately touched Victim. The circumstances here are therefore in contrast to *John A.*, where the Supreme Court held that the cause for expulsion was not based upon a preponderance of the evidence because "a reasonable person in the conduct of serious affairs will not rely *solely* on written statements." (*John A.*, *supra*, at p. 307, italics added.)

In reviewing a sufficiency-of-the-evidence claim, we presume that the administrative decision is correct. (*Patterson Flying Service*, *supra*, 161 Cal.App.4th at p. 419.) As the party challenging the administrative decision, it is M.N.'s burden to establish that the District abused its discretion by rendering a decision not supported by substantial evidence. (*JKH Enterprises, Inc. v. Department of Industrial Relations* (2006) 142 Cal.App.4th 1046, 1062) Based upon our review of the entire record,

resolving doubts in favor of the respondent (see *Committee to Save Hollywoodland*, *supra*, 161 Cal.App.4th at p. 1182), we conclude there was substantial evidence to support the administrative decision of the District that M.N. committed sexual battery for which expulsion is the required statutory punishment.

### D. Other Arguments Presented by M.N.

M.N. makes two additional arguments in support of his claim of error. He argues that the District's decision was without support because the District failed to make factual findings as required by section 48918, subdivision (f)(1).[15] M.N. contends further that the court erred in upholding the District's finding that M.N. had committed a "sexual battery on the theory that he was *aware* that his actions were harmful and that this knowledge satisfied the sexual battery statute's third intent prong for sexual abuse." (Original italics.) M.N. cannot prevail based upon either contention.

We observe that M.N. did not raise below the argument that the District failed to make required factual findings. He did not assert it in his writ petition, the notice of motion, or in the two memoranda of points and authorities filed in support of the petition. Moreover, M.N. did not make the contention in his counsel's lengthy argument presented at the hearing on the writ petition.

" 'An appellate court will ordinarily not consider procedural defects or erroneous rulings, in connection with relief sought or defenses asserted, where an objection could have been but was not presented to the lower court by some appropriate method . . . . The circumstances may involve such intentional acts or acquiescence as to be appropriately classified under the headings of estoppel or waiver . . . . Often, however,

---

[15] "If the hearing officer or administrative panel recommends expulsion, findings of fact in support of the recommendation shall be prepared and submitted to the governing board of the school district. All findings of fact and recommendations shall be based solely on the evidence adduced at the hearing . . . ." (§ 48918, subd. (f)(1).)

the explanation is simply that it is *unfair to the trial judge and to the adverse party* to take advantage of an error on appeal when it could easily have been corrected at the trial.' [Citation.]" (*Doers v. Golden Gate Bridge etc. Dist.* (1979) 23 Cal.3d 180, 184-185, fn. 1, original italics (*Doers*); see also *Nelson v. Avondale HOA* (2009) 172 Cal.App.4th 857, 863.) As stated by one court, if the forfeiture doctrine were not applied to claims unasserted at the trial level, losing parties "could attempt to embed grounds for reversal on appeal into every case by their silence." (*Saville v. Sierra College* (2005) 133 Cal.App.4th 857, 873.) Appellate courts have applied the doctrine of forfeiture to a variety of challenges not raised until the time of appeal. (See, e.g., *In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133-1134 [objection to ambiguities in proposed statement of decision]; *K.C. Multimedia, Inc. v. Bank of America Technology & Operations, Inc.* (2009) 171 Cal.App.4th 939, 949-950 [objection to pretrial procedure used by trial court to dispose of claims barred by preemption]; *Broden v. Marin Humane Society* (1999) 70 Cal.App.4th 1212, 1226, fn. 13 [challenge to sufficiency of declaration].) Application of the forfeiture doctrine is equally appropriate in the context of an appeal taken from an order granting or denying a writ petition. (See *Zubarau v. City of Palmdale* (2011) 192 Cal.App.4th 289, 306 [respondent forfeited statute of limitations argument in opposition to writ petition by failing to raise it at trial level].)

As noted, M.N. failed to assert below that the District's decision failed to meet statutory requirements for findings of fact. He has therefore forfeited the challenge on appeal. (*Doers*, *supra*, 23 Cal.3d at pp. 184-185, fn. 1.)

M.N.'s argument that the trial court erred in allegedly basing its decision on the theory that M.N. was aware that his actions were harmful also fails for two reasons. First, in asserting this position, M.N. looks to one sentence of the order, and in doing so ignores the rest of the paragraph in which the court explained there were *several* reasons, including M.N.'s knowledge of the conduct's harmfulness, that the evidence supported a

finding that M.N. committed the actions for the purpose of sexual abuse.[16] In viewing the record, we do not agree with M.N. that the court based its finding upon an erroneous legal standard. Second, even were we to credit M.N.'s argument, any alleged error in reasoning by the superior court is of no consequence here. As noted, *ante*, our duty is to review the findings of the District to determine whether they "were based on substantial evidence in light of the entire administrative record. [Citations.]" (*Desmond v. County of Contra Costa* (1993) 21 Cal.App.4th 330, 335; see also *MHC Operating, supra,* 106 Cal.App.4th at p. 218.)

## III.   DISPOSITION

The judgment entered on the order of December 7, 2015, concerning the petition for writ of mandate, as modified and clarified by the order of February 10, 2016, is affirmed.

---

[16] The court's order reads in part: "Here, M.N. had observed a long history of the abuse the victim had suffered at the hands of others—the taunting she had experienced and the gestures and words of others. M.N. states that before he became involved, the assaults would occur as often as twice a week for almost two months. He knew that his actions were witnessed by others so that the victim would be humiliated or insulted. It makes no difference that the actions which humiliated the victim were primarily motivated by M.N.'s avoidance of his own potential embarrassment by failing to participate in the activity. He admits that after his touching, he would join the other boys in laughing at the event. While M.N. insists that the victim appeared 'not to care' what was happening to her, he also admits that the only time she ever spoke to him was when she confided in him that she did not like the Diana Avenue boys. Perhaps most importantly, M.N. knew what he and the other boys were doing was wrong. In conclusion, there is substantial non-hearsay evidence of the sexual abuse element found in misdemeanor sexual battery."

31

_____
BAMATTRE-MANOUKIAN, J.


WE CONCUR:


_____
ELIA, ACTING P.J.


_____
MIHARA, J.


*M.N. v. Morgan Hill Unified School Dist. et al.*
**No. H043343**

32

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| M.N., <br><br> Plaintiff and Appellant, <br><br> v. <br><br> MORGAN HILL UNIFIED SCHOOL DISTRICT et al., <br><br> Defendants and Respondents. | H043343 <br> (Santa Clara County <br> Super. Ct. No. 1-15-CV285644) <br><br> ORDER CERTIFYING OPINION <br> FOR PUBLICATION |

THE COURT:

The opinion in the above-entitled matter filed on January 24, 2018, was not certified for publication in the Official Reports. Respondent Morgan Hill Unified School District and the California School Boards Association's Education Legal Alliance have separately requested the opinion be certified for publication. Under California Rules of Court, rules 8.1105(c), the opinion is ordered published.

_____
                                BAMATTRE-MANOUKIAN, J.


_____
                                ELIA, ACTING P.J.


_____
                                MIHARA, J.

Trial Court:                                  Monterey County Superior Court
                                              Superior Court No.:  M116436


Trial Judge:                                  Hon. James L. Stoelker


Attorneys for Plaintiff and                   Lindsay Marie Cooper
Appellant:                                    Jeffrey William Nardinelli
M.N.                                          Quinn Emanuel Urquhart & Sullivan LLP


Attorneys for Defendant and                   Sloan Robert Simmons
Respondent:                                   Steve Ngo
Morgan Hill Unified School                    Lozano Smith
District


Attorney for Defendant and                    Robert M. Coelho
Respondent:                                   Office of the Monterey County Counsel
Santa Clara County Office of
Education

*M.N. v. Morgan Hill Unified School District et al.*
**H043343**