Filed 7/28/23  Urani v. PNC Bank CA1/5

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| CATHERINE URANI, | A161438 |
| Plaintiff and Appellant, | |
| v. | |
| PNC BANK, N.A., | (Contra Costa County Super. Ct. No. MSC1902430) |
| Defendant and Respondent. | |

Catherine Urani appeals from the entry of judgment on her complaint for violations of the Homeowner Bill of Rights (Civ. Code, §§ 2923.6, 2923.7)[1] and related claims.  Urani claimed that PNC Bank, N.A., violated the statute by mishandling her application for a loan modification.  The trial court concluded Urani failed to allege a material violation of the statute, and it sustained PNC's demurrer.  We reverse as to the Homeowner Bill of Rights claims and affirm as to the remaining causes of action.

## BACKGROUND

### A.

The Homeowner Bill of Rights is designed to ensure that, as part of the nonjudicial foreclosure process, a mortgage servicer meaningfully considers the borrower's suitability for any

---

[1] Undesignated statutory references are to the Civil Code.

available loss mitigation options that the servicer offers, such as a loan modification. (§ 2923.4.) While the statute does not give borrowers a right to obtain any particular option (*ibid.*), it does impose procedures that the servicer must follow.

For material violations of specified provisions, the statute authorizes preforeclosure injunctive relief (§ 2924.12, subd. (a)(1)), postforeclosure claims for actual economic damages (and additional damages for more egregious violations) (§ 2924.12, subd. (b)), and attorney fees and costs for prevailing claimants (§ 2924.12, subd. (h)). Any preforeclosure injunctive relief shall remain in place until the court determines that the violations have been corrected and remedied. (§ 2924.12, subd. (a)(2).)

**B.**

In her operative complaint, Urani alleged that PNC serviced the mortgage loan on her home. As explained in more detail below, when she applied for a loan modification, PNC violated the Homeowner Bill of Rights by pursuing foreclosure while her application was pending (a practice known as dual tracking), by assigning a single point of contact who failed to perform her duties under the statute, and by failing to provide a written list of reasons for denying her application. Although a trustee's sale was scheduled for November 2019, it apparently did not take place.

Urani sued under the Homeowner Bill of Rights to enjoin the sale. She also brought claims for negligence and unfair competition (Bus. & Prof. Code, § 17200 et seq.).

PNC demurred. Among other grounds, it argued Urani failed to allege any material violation of the Homeowner Bill of Rights and failed to allege standing under the unfair competition law because she did not clearly allege she qualified for a loan modification and the trustee's sale had not proceeded. The trial court sustained PNC's demurrer with leave to amend. After

2

Urani waived the opportunity to amend, the court sustained the demurrer without leave to amend and dismissed the case.

## DISCUSSION

### A.

PNC contends this appeal is moot. We disagree.

A case is moot when the decision of the reviewing court can have no practical impact or provide the parties with any effectual relief. (*MHC Operating Limited Partnership v. City of San Jose* (2003) 106 Cal.App.4th 204, 214.) Generally, the burden of persuasion is on the respondent. (*Parkford Owners for a Better Community v. County of Placer* (2020) 54 Cal.App.5th 714, 721.)

Citing section 2924.12, PNC claims the matter is moot because there are no pending foreclosure proceedings against Urani's property and the only available preforeclosure relief is an injunction to stop the trustee's sale. Urani concedes the 2019 sale was cancelled, with no new notice of default or notice of sale recorded since then. Still, she urges that her account remains in default with no foreclosure prevention alternatives in place, and nothing prevents PNC from restarting the foreclosure process. PNC acknowledges that Urani was not approved for a loan modification and that foreclosure could begin anew with the recording of a new notice of trustee's sale.

We turn to the statute to see if Urani can obtain relief. An injunction is authorized when "a trustee's deed upon sale has not been recorded." (§ 2924.12, subd. (a)(1).) Any injunction shall remain in place "*and any* trustee's sale shall be enjoined" until material violations are corrected and remedied. (§ 2924.12, subd. (a)(2), italics added.) These provisions make it clear that an injunction may issue with or without a particular trustee's sale on notice. The statute authorizes a motion to dissolve an injunction "based on a showing that the material violation has been corrected and remedied" (§ 2924.12, subd. (a)(2))—not

merely because a notice of default expired or a scheduled sale was cancelled. The preforeclosure relief authorized by the statute could still aid Urani, so her appeal is not moot.

Finally, PNC contends that there are no material violations to support an injunction, and it corrected any technical violations. These issues are intertwined with the merits of Urani's appeal, to which we turn now.

## B.

Urani contends the trial court applied the wrong standard and erroneously held she alleged no material violations of the Homeowner Bill of Rights. We agree.

## 1.

We review an order sustaining a demurrer de novo, exercising our independent judgment as to whether, as a matter of law, the complaint states a cause of action on any available legal theory. (*Churchman v. Bay Area Rapid Transit Dist.* (2019) 39 Cal.App.5th 246, 249.) We assume the truth of all material factual allegations together with those matters subject to judicial notice. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)

## 2.

There is not much dispute that Urani alleged PNC committed procedural violations of the statute during the modification process. We see at least three.

First, when a complete application for loan modification is pending, the servicer may not record a notice of default or a notice of sale until the servicer provides written denial of the application and gives the borrower at least 30 days to appeal. (*Morris v. JPMorgan Chase Bank, N.A.* (2022) 78 Cal.App.5th 279, 311 (*Morris*); § 2923.6, subds. (c)(1), (d).)

4

Urani alleged that when she applied for a modification in the spring of 2019, PNC denied her application, supposedly because she had not submitted all needed information. Her single point of contact explained PNC did not have a particular deed it had not previously requested and said Urani could re-apply due to the mix-up. Urani applied again. PNC asked her to provide another newly requested deed by October 3, 2019. Her husband emailed a copy of the deed on September 20, at which point the application was complete. But the trustee recorded a notice of sale on September 26, about a month before PNC denied Urani's application in late October.

These allegations describe dual tracking, a violation of section 2923.6. Urani alleged PNC allowed a notice of sale to be recorded while her complete application was still pending.

Second, the servicer must establish a single point of contact responsible for ensuring the borrower is considered for available foreclosure alternatives (§ 2923.7, subd. (b)(4)), communicating the application process and deadlines (§ 2923.7, subd. (b)(1)), and coordinating receipt of the application documents while notifying the borrower of missing items (§ 2923.7, subd. (b)(2)). The contact must have access to current information and personnel sufficient to timely, accurately, and adequately inform the borrower of her status (§ 2923.7, subd. (b)(3)) and to individuals empowered to stop the foreclosure process when necessary (§ 2923.7, subd. (b)(5)).

Building on her dual tracking theory, Urani alleged her single point of contact failed to notify her of documents missing from her applications and lacked access to colleagues who could stop the foreclosure proceedings while her application was still pending. These allegations describe another violation of the statute.

Finally, the servicer must send a written notice to the borrower giving the reasons for denial and instructing her how to

5

appeal. (§ 2923.6, subd. (f).) This is important because the servicer's reasoning could provide grounds for an appeal. Here, Urani alleged that PNC's denial letter merely told her to contact her representative for a statement of reasons. She thus alleged PNC failed to explain its determination in writing as required by the statute.

## 3.

PNC primarily contends any "technical" violation Urani alleged was not material. The parties generally agree that a material violation is one that affected the borrower's loan obligations, disrupted the loan modification process, or otherwise harmed the borrower in her efforts to be considered for a loss mitigation option. (*Morris, supra,* 78 Cal.App.5th at pp. 304–305 & fn. 14.)

Urani alleged that here. She pled that if her application were adequately reviewed, it would have been approved, "or at the very least, she would better know her options and have been able to pursue other foreclosure prevention alternatives" at an earlier time. These are not bare conclusions or contradictions, but alternative theories of materiality. (See *Crowley v. Katleman* (1994) 8 Cal.4th 666, 690–691 [recognizing modern practice of pleading alternative factual or legal theories when in doubt as to which is most accurate].) They are similar to allegations found adequate in *Morris* and other California authorities on the theory that the modification process was disrupted.[2] (See *Morris, supra*, 78 Cal.App.5th at pp. 311–313; *Berman v. HSBC Bank USA, N.A.*

---

[2] PNC's discussion of federal authorities ignores "that federal district judges have more latitude to dismiss claims at the pleading stage . . . than California trial judges have under our traditional notice pleading standards." (*Morris, supra*, 78 Cal.App.5th at p. 304, fn. 14.) For this reason, PNC's federal authorities do not support dismissing Urani's claims.

(2017) 11 Cal.App.5th 465, 472–474 (*Berman*); *Potocki v. Wells Fargo Bank, N.A.* (2019) 38 Cal.App.5th 566, 570–571.)

Like the trial court, PNC deems materiality lacking because Urani did not unequivocally allege she qualified for a modification and admits her application was ultimately denied. But Urani alleged PNC repeatedly miscommunicated about her application, allowed a trustee's sale to be noticed while it was pending, and denied it weeks later without explanation. This disrupted the modification process, whether or not Urani was ultimately entitled to a modification. (See *Berman, supra*, 11 Cal.App.5th at p. 474; *Morris, supra*, 78 Cal.App.5th at pp. 311–313.) The bare fact that PNC denied Urani's application does not show it reviewed the complete application in good faith; the dual tracking and other alleged mistakes suggest it did not. Moreover, had PNC provided Urani its reasons for denying the application, she might have been able to pursue a successful appeal. The complaint alleges material violations of the statute.

**4.**

On a similar note, PNC argues it corrected and remedied any violations by postponing the sale until it denied Urani's application. (See § 2924.12, subd. (c); *Schmidt v. Citibank, N.A.* (2018) 28 Cal.App.5th 1109, 1115.)

PNC relies primarily on *Billesbach v. Specialized Loan Servicing LLC* (2021) 63 Cal.App.5th 830 to support this argument. But *Billesbach* was decided on summary judgment, based on evidence that the loan servicer postponed the foreclosure sale, provided a single point of contact, communicated with the borrower about foreclosure alternatives, fully considered his application, and offered him a trial-period modification plan. (*Id.* at pp. 837, 846.) Based on this evidence, the court of appeal found the statute's purpose to ensure that borrowers have a meaningful opportunity to obtain loss mitigation options was satisfied. (*Id.* at p. 846.)

7

As already discussed, nothing like that is alleged here. The bare fact that PNC denied Urani's application does not show the alleged violations were corrected and the statute's purpose was satisfied.

## C.

Finally, the trial court found that Urani failed to allege negligence and unfair competition. Urani does not address the negligence claim in her briefing. And she defends the unfair competition claim only by arguing she adequately pled her underlying Homeowner Bill of Rights claims, failing to squarely address the trial court's ruling that she did not allege standing under the unfair competition law. Urani has thus abandoned these claims on appeal. (See *Behr v. Redmond* (2011) 193 Cal.App.4th 517, 538.)

## DISPOSITION

The judgment of dismissal is reversed. The order sustaining PNC's demurrer is reversed as to the first and second causes of action under the Homeowner Bill of Rights; we affirm as to the remaining claims. PNC shall bear Urani's costs on appeal.

8

_____

BURNS, J.

We concur:

_____

JACKSON, P.J.

_____

SIMONS, J.

A161438

9