Filed 3/27/26  Conservatorship of C.R. CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| Conservatorship of the Person of C.R. | |
| PUBLIC GUARDIAN OF CONTRA COSTA COUNTY, as Conservator, etc.,<br><br>      Petitioner and Respondent,<br><br>v.<br><br>C.R.,<br><br>      Objector and Appellant. | A172665<br><br>(Contra Costa County<br> Super. Ct. No. MSP20-01016) |

**MEMORANDUM OPINION**[1]

C.R. is a conservatee under the Lanterman-Petris-Short Act (LPS Act; Welf. & Inst. Code, § 5000 et seq.).[2]  She appeals a January 2025 trial court

---

[1] We resolve this case by memorandum opinion pursuant to California Standards of Judicial Administration, section 8.1, reciting only those facts necessary to resolve the issue raised.

[2] Undesignated statutory references are to the Welfare and Institutions Code.  The LPS Act "provides one-year conservatorships for those 'gravely disabled as a result of a mental health disorder or impairment by chronic alcoholism.' " (*Conservatorship of K.P.* (2021) 11 Cal.5th 695, 703.)  The conservatorship may be extended for additional one-year periods if the person

1

order determining the least restrictive appropriate placement as a secured mental health rehabilitation center (MHRC). We dismiss the appeal as moot.

In February 2024, the trial court determined that C.R.'s least restrictive placement was a super board and care. She was eventually placed at Ever Well, a super board and care in Stockton. In August 2024, a jury found C.R. was gravely disabled and the court reappointed the Public Guardian of Contra Costa County (Public Guardian) as conservator. The Public Guardian requested to raise C.R.'s placement level to an MHRC but the court declined to do so at that time.

Between June and August 2024, C.R. had repeated episodes that required trips to the hospital for psychiatric evaluation. She fled from Ever Well at least twice. After C.R. returned to Ever Well, she was taken to St. Joseph's Hospital (hospital) on August 20, after police were called to the board and care. The hospital's behavioral health clinician conducted a psychiatric assessment and determined an acute psychiatric inpatient stay was appropriate because she was not stable to return to Ever Well. The hospital sought an acute psychiatric unit to which they could transfer C.R., but no facilities were available and she remained at the hospital's emergency department for over one month. The hospital also sent a referral to Crestwood Manor (Crestwood) in Stockton, a locked skilled nursing facility with specialized treatment program (SNF-STP), which is a more restrictive placement than a board and care. On September 17, the Public Guardian was notified that Crestwood was obtaining records from the hospital and was

---

remains gravely disabled. (*Conservatorship of T.B.* (2024) 99 Cal.App.5th 1361, 1376.) If grave disability is found, the trial court must determine the least restrictive appropriate placement. (§ 5358, subds. (a)(1)(A), (c)(1).)

prepared to admit C.R., and the Public Guardian sent the requested letters and orders.

On September 24, 2024, C.R. was admitted to Crestwood. That same day, the Public Guardian emailed C.R.'s counsel notice of the move. On October 1, the Public Guardian filed with the trial court notice of change of placement level (§ 5358, subd. (d)) stating it found that the present least restrictive suitable placement was SNF-STP, which was more restrictive than the court's August placement order. C.R. filed a request for an order to show cause why she was placed in a locked facility without notice as required by section 5358, subdivision (d)(1) (section 5358(d)(1))[3] and two days later she filed a motion for an order to show cause why the Public Guardian should not be held in contempt.

The trial court heard the requests for orders to show cause in October 2024. C.R.'s counsel argued that C.R. had been moved to Crestwood without the proper notice required by section 5358(d)(1). C.R.'s counsel also advised that C.R. did not want to be at an MHRC and requested a placement hearing.

---

[3] Section 5358(d)(1) states: "Except for a conservatee who is gravely disabled, as defined in subparagraph (B) of paragraph (1) of subdivision (h) of Section 5008 [Murphy conservatees], the conservator may transfer his or her conservatee to a less restrictive alternative placement without a further hearing and court approval. In any case in which a conservator has reasonable cause to believe that his or her conservatee is in need of immediate more restrictive placement because the condition of the conservatee has so changed that the conservatee poses an immediate and substantial danger to himself or herself or others, the conservator shall have the right to place his or her conservatee in a more restrictive facility or hospital. Notwithstanding Section 5328, if the change of placement is to a placement more restrictive than the court-determined placement, the conservator shall provide written notice of the change of placement and the reason therefor to the court, the conservatee's attorney, the county patient's rights advocate and any other persons designated by the court pursuant to subdivision (c)."

The court denied without prejudice C.R.'s motion for an order to show cause and it set a placement hearing. Due to difficulty obtaining missing medical records as well as conservator and counsel unavailability, the placement hearing was continued several times.

The placement hearing was conducted over multiple days in December 2024 and January 2025. Two Crestwood employees and three conservators from the Public Guardian's office testified. One of C.R.'s conservators testified that when a conservatee is admitted to the hospital, while the conservator provides input, the hospital makes the final determination on the next placement. Here, the conservator advised the hospital that it would be best for C.R. to go to an acute psychiatric unit. Instead, she went to Crestwood. The conservator did not refer C.R. to Crestwood. Following the presentation of evidence and closing arguments, the trial court found that C.R.'s conduct was aggressive and resulted in physical assaults on staff or destruction of property, which behavior continued despite compliance with her medications. It also found that the conservator did not authorize C.R.'s placement at Crestwood, the hospital did.

Throughout the hearing, the trial court and counsel discussed the legal standard governing the hearing. C.R. argued that section 5358(d)(1) required the court to determine whether—at the time of the hearing—C.R. continued to pose an immediate and substantial danger to herself or others such that she should remain in Crestwood, a more restrictive placement than a board and care previously ordered by the court. C.R. asserted that until a subsequent order was made, the previous order stood. The Public Guardian argued that section 5358(d)(1) allows an immediate response, which is why C.R. was placed at Crestwood. After C.R. objected, the Public Guardian contended that now the court conducted a standard placement hearing to

4

determine the appropriate placement level. C.R. disputed this stance. The court stated it was "a novel issue." In distinguishing section 5358(d)(1), which just includes a notice requirement, from subdivision (d)(2) (Murphy conservatees), which includes a hearing requirement, the court stated it could not find any case law interpreting what happens in section 5358(d)(1) in this type of circumstance.

At the conclusion of the hearing, the trial court acknowledged that section 5358(d)(1) allows a conservator to quickly decide to move a conservatee to a more restrictive placement if they present an immediate and substantial danger. It only requires notice, not court approval, and it says nothing about a hearing. The court observed that at the end of section 5358, the statute references section 5358.3, which is a hearing statute.[4] Therefore, the court determined that in this circumstance the hearing would proceed under section 5358.3. Accordingly, the court would determine the least restrictive placement level. The court reasoned that there was a point in time where its analysis pivoted: Leading up to September 24, 2024—when C.R. was moved from the hospital to Crestwood—the inquiry would have been whether she posed an immediate or substantial threat of harm to herself or others. But then the issue "pivots" to what is the appropriate least restrictive placement. The court ordered the least restrictive suitable placement was a secured MHRC/SNF-STP. It concluded that C.R. required a more restrictive placement than a board and care, her prior placement level.

C.R. appealed. She argues (1) the Public Guardian unlawfully delegated its authority to the hospital to move her to Crestwood; (2) the trial

---

[4] Section 5358.3 dictates hearings on placement levels, powers, and disabilities. (*Conservatorship of A.H.* (2025) 114 Cal.App.5th 227, 265 (*A.H.*); § 5358.3)

court committed a mistake of law by conducting a standard placement hearing to determine the least restrictive placement rather than applying the heightened standard under section 5358(d)(1); and (3) under that heightened standard, substantial evidence did not support the move from the hospital's emergency department to Crestwood. Based on these challenges, C.R. contends the trial court's January 2025 placement order must be reversed.

In October 2025, while this appeal was pending, C.R. petitioned the trial court to set a placement hearing to determine the least restrictive placement. In January 2026, the court conducted the placement hearing and determined that a stepdown to board and care was not appropriate. The court ordered that the least restrictive placement level remained a secured MHRC/SNF-STP.[5]

The Publican Guardian argues the appeal should be dismissed as moot because there is no longer a controversy for this court to decide—C.R. asks us to reverse the January 2025 placement order but the trial court recently conducted another placement hearing and determined the least restrictive placement remained the same level of placement determined in January 2025. C.R. acknowledges the appeal is moot because the trial court was going to reconsider her placement. (See *In re D.P.* (2023) 14 Cal.5th 266, 276 [case is moot if events render it impossible for a court, if it should decide in appellant's favor, to grant her any effective relief].)

---

[5] Before the appeal was fully briefed, the Public Guardian filed a motion to dismiss and accompanying request for judicial notice. C.R. opposed the motion. We granted the unopposed request for judicial notice and deferred ruling on the motion to dismiss to be considered with the merits of the appeal. The Public Guardian subsequently filed a second request for judicial notice, asking us to take judicial notice of the trial court's January 23, 2026 placement order. That unopposed request, filed March 5, 2026, is granted. (Evid. Code, §§ 452, 459.)

While the appeal is technically moot, we nevertheless have discretion to decide the dispute on the merits.  (See *Conservatorship of Susan T.* (1994) 8 Cal.4th 1005, 1011, fn. 5.)  We may exercise that discretion "if the controversy between the parties is likely to recur.  [Citations.]  We may also decide a moot appeal if it is a matter of general public interest or importance."  (*A.H.*, *supra*, 114 Cal.App.5th at p. 247.)  C.R. urges us to exercise our discretion to consider the merits of her appeal, contending it raises issues of general public importance which are likely to recur yet evade review.  We decline her request.

It has not been demonstrated that the issues raised in this appeal are issues of broad public interest or importance which are likely to recur.  C.R.'s appeal raises the following issues: (1) Did the Public Guardian unlawfully delegate authority to the hospital to move C.R. to a more restrictive placement level? (2) At the time of its challenged decision, was the trial court supposed to apply the standard enunciated in section 5358(d)(1) or was it a standard placement hearing to determine the least restrictive appropriate placement level?  C.R. asserts that she "is not the only conservatee where these placement issues have and will arise."  But she refers us to no other conservatorship proceedings, in Contra Costa County or elsewhere, where they have arisen.  The pertinent provision of section 5358(d)(1)—authorizing a conservator to place a conservatee in a more restrictive facility if their condition changes such that they pose an immediate and substantial danger to themselves or others—has existed for decades.  (See *In re Gandolfo* (1984) 36 Cal.3d 889, 898, fn. 8 [quoting section 5358, as amended by Stats. 1980, ch. 681, § 2].)  If similar circumstances were present in other conservatorship proceedings, there likely would be case law on these topics.  But the parties cite to none, and the trial court could not find any.  And given the unique

factual history here, the dearth of case law on these topics does not warrant our exercise of discretion. The trial court described this as "a unique circumstance" because there "appear[ed] to be a change in circumstance which resulted in [C.R.] being placed in a higher level after the court had designated a lower leve[l]."

C.R. cites little authority regarding mootness. Based on our review, cases where the reviewing court has considered the merits of a moot appeal presented legal issues potentially impacting future proceedings involving the litigants as well as the general administration of the LPS conservatorship statutory scheme. For example, in *K.G. v. Meredith* (2012) 204 Cal.App.4th 164, the petitioners argued "that the Public Guardian routinely seeks imposition of section 5357(d) disabilities on temporary and one-year LPS conservatees without a judicial determination of decisional incapacity and, in the case of temporary conservatorship, without meaningful notice and an opportunity to be heard." (*Id*. at p. 171.) The appellate court considered the merits of the appeal on two bases: Because both petitioners had repeated involuntary commitments and conservatorship proceedings, it was "likely that the issues raised in this appeal [would] arise again in future conservatorship proceedings involving" the individual petitioners. (*Id*. at p. 175.) "Moreover, because [p]etitioners challenge what they allege are the ongoing practices and policies of the Public Guardian, there is a reasonable likelihood the alleged violations will continue to affect other proposed LPS conservatees. Because of the short terms of temporary and one-year conservatorships and the lengthy process of a typical appellate proceeding, it is likely that any future litigation raising the issues on appeal here would also become technically moot and thus potentially evade appellate review." (*Ibid*.)

Similarly, in *A.H.*, *supra*, 114 Cal.App.5th 227, A.H. argued his prolonged involuntary confinement during the lengthy delays in his conservatorship proceedings violated his due process rights. (*Id.* at pp. 246, 255.) The appellate court determined "the issues raised by A.H. have recurred for some time and appear almost certain to recur in the future. Indeed, those issues have plagued LPS cases in Contra Costa County for years, which is A.H.'s very point." (*Id.* at p. 247.) The court cited various cases from the county involving delays. (*Ibid.*) Here, by contrast, C.R. does not demonstrate any customary practices or policies of the Public Guardian to invoke section 5358(d)(1) to move LPS conservatees to a more restrictive placement and/or to allow an entity other than the conservator to make that decision. Therefore, there is no demonstration that the issues raised by C.R. are recurring or likely will recur in the future, either with C.R. or with LPS conservatees generally.

Finally, C.R.'s sufficiency of the evidence argument is a fact-specific issue pertinent only to her case. In asserting that the higher standard under section 5358(d)(1) applied at the time she was moved from the hospital to Crestwood, she argues no substantial evidence demonstrated she was an immediate and substantial danger to herself or others. This issue requires analysis of the evidence presented during the proceedings leading to the challenged placement order and does not warrant our consideration of the appeal's merits. (See *In re David B.* (2017) 12 Cal.App.5th 633, 654 [declining to exercise jurisdiction to address "fact-specific questions" in moot appeal]; *MHC Operating Limited Partnership v. City of San Jose* (2003) 106 Cal.App.4th 204, 215 [issues presented were "factual in nature" and required "resolution on a case-by-case basis"].)

9

In sum, we cannot conclude that these are issues of broad public interest or importance which are likely to recur.  Accordingly, we decline to reach the merits of C.R.'s appeal.

## DISPOSITION

The appeal is dismissed as moot.


_____
LANGHORNE WILSON, J.


WE CONCUR:


_____
BANKE, Acting P. J.


_____
SMILEY, J.


*Public Guardian of Contra Costa County v. C.R.  /  A172665*